## AT NISI PRIUS, AT HARRISBURGH, OCTOBER ASSIZES 1798.

### CORAM, YEATES AND SMITH, JUSTICES.

### ABRAHAM STOUT *against* RUDOLPH RASSEL.

The law of England as to mutual promises is not applicable to Pennsylvania.  The day laid in the declaration on a parol contract is not material on evidence.  Court will not direct a nonsuit, where the proofs are variant and contradictory.  Credit of a witness not to be impeached by charges of offences of which he has not been convicted.

SPECIAL action on the case.  The plaintiff declared that whereas George Savin (alias Green) was indebted to him in 100*l*. the defendant, in consideration that the plaintiff promised to accept him as his debtor in the room of the said George, on the 2d July 1790, promised to pay him the said 100*l*. within six weeks from that time or sooner.: nevertheless, &c.  Plea *non assumpsit*.

The evidence on the trial, turned out as follows :

Savin was an artful swindler, and gulled a number of ignorant persons who deliver to him, divers sums of gold and silver, under a pretence that he would double the amount by some chemical process in a short peroid.  He first received, as if reluctantly, some small sums, and delivered to the adventurers in his bank ( so called ) a few days afterwards, genuine Spanish dollars apparently new, doubling the sums paid him.  When his frame was sufficiently known, and the avarice of the weak people in the neighborhood highly inflamed, he soon got into his custody considerable sums, and then decamped privately in the night from his haunt—a retired place twelve miles distant from Reading, and concealed himself in Dawphin county.  To his latter hiding place he was pursued by the plaintiff and one Francis

Umbehocker, two of his dupes, who offered a reward for apprehending him. The person whom they made use of for this purpose, ingeniously held out to the defendant, the lure of having 200*l.* in specie at home, ready to be put into Savin's bank, if he would come to his house and receive it, for multiplication. Some strong suspicious circumstances were shown against defendant, as being in combination with Savin. The latter first came to the house in pursuance of the scheme about 10 o'clock at night of the 2d July 1790. The plaintiff and Umbehocker lay concealed in the barn, and were notified of Savin's presence. On their appearance, Savin was alarmed, and desired them to walk up stairs with him. On a signal given, the defendant also appeared, and some altercation took place ; but afterwards on being informed of their respective demands, he became security for Savin's appearance at his house the next morning before day. Thither they all came on the 3d July 1790, and defendant promised to pay the plaintiff his demand against Savin 100*l.* within six weeks from that time, or sooner ; and as Savin owed to Umbehocker 303 dollars and 11 cents, to pay him 100 dollars down and the residue on the Tuesday following at the same house in Dauphin county. Whereupon Savin was at liberty.

There was some diversity between the witness as to what was the real object of the parties in pursuing Savin, whether to sue him for their demands, or to prosecute him for a cheat and conspiracy.

It was also questionable, whether the defendant's promise was not grounded on the liberation and entire discharge of Savin, and not on the plaintiff's assumption to accept the defendant as his debtor in lieu of Savin. One of the witnesses swore, that mutual promises passed on the occasion.

The testimony for the plaintiff being concluded, the defendant's counsel moved for a nonsuit on three grounds.

1st. That the plaintiff's demand was originally founded on a fraudulent transaction, between him and Savin.

2d. That there were several material variances between the declaration and the evidence adduced in support of it.

3d. That the contract on the part of the defendant militated against the principals of society, and tended to the public injury.

On the first head, it was urged, that the plaintiff could not have supported a suit against Savin for the sum paid to him. He could not be considered as an innocent sufferer. It was obvious to common sense, that Savin could make two dollars out of one, except by frauds on other persons. Add to this, he must naturally be supposed to retain some of the cash received for his extraordinary

services. The more distinguished personages must have had it in con-
templation, to enrich themselves by the plunder of others, who acted
inferior parts. It is impossible that the plaintiff could have seriously
believed his loan could in so short a time have increased two-fold by
any other mode than by despoiling and tricking of others. By his
improper conduct, he recommended Savin to public confidence. Con-
tracts immoral in themselves, or militating against the general policy
of the country, are merely void. 1 Pow. on Contracts, 165. 166, 167.
Contracts tending to a fraud on the public are invalid. Ib. 185.
Doug. 450, (last edit.) So of a contract to puff goods at auction. 1
Pow. on contracts, 186. Treat. Eq. 24.

On the second head, it was said, that two material variances had oc-
curred. The plaintiff has bound himself down by his declaration, to
prove a special contract on the 2d July 1790. The defendant is al-
leged to have promised to pay the money within six weeks from that
time, or sooner. This makes the day material, as thereon must rest
the period of payment, and incorporates the day with the essence of
the contract.

Again, the preponderance of proof was, that the defendant prom-
ised to pay, in consideration of the defendant's actual discharge of
Savin, and that he did not rely on any assumption to receive him as
his debtor. If this was the case, the plaintiff may bring a second suit
on the actual discharge of Savin, and the verdict in this action could
not be pleaded in bar against him. The two contracts are wholly dis-
similar. If a contract be proved otherwise than as alleged, that is not
good evidence to maintain the declaration. Gilb. Law Evid. 190, 191.
Doug. 665. 1 Term Rep. 447. Unless the whole contract is set out,
the declaration cannot be supported. Ib. 240.

On the third head, it was urged, that the present contract was corrupt,
and injurous to society. The object of the plaintiff and Umbehocker
was not to bring civil suits for their demands, but to prosecute Savin
criminally. It was known, that he had committed a gross offence, and
some years afterwards he was convicted of it. To permit him to escape,
after offering a reward for apprehending him, was a public injury,
and operated as a sacrifice of the social interests to individual avarice.
Savin might surely be indicted. An intent to deceive the king's sub-
jects is thus punishable. Dall. 44. An indictment lies for maliciously
and wickedly killing a horse. Ib. 338. So for killing a dog. 22 Mod.
337.

It will not be pretended, that a robbery or larceny can be le-
gally compounded by the parties injured, or that the promises of

third persons to make them compensation, if they suffered the culprits to escape, could be enforced in a court of law. Frauds in the present state of society, are frequently more dangerous to the community than felonies ; and it never can consist with sound policy to commit the prosecution of public offences to the will of individuals. Every contract which tends to screen a person from a criminal charge is illegal, as well as immoral. A bond given to effectuate the withholding of a prosecution for perjury, is void at common law. 2 Wils. 344 to 348. 1 Espin. 197.

The plaintiff's counsel answered, that the first and third exceptions were matters of evidence on varying proofs. So also of the second variance relied on. The jury were the proper judges of this evidence, and it was hoped they would draw different deductions therefrom.

As to the day in the declaration, being laid on the second, instead of the third day of July, the objection was of no moment. If the suit had been instituted the day before the money became due, the defendant might have taken the advantage of this precipitancy ; and on the general issue of non-assumpsit, every material averment is put in issue. 2 Bl. Rep. 840.

In an action for a false return, plaintiff set out that he was chosen on the 1st October, according to the custom; on evidence it appeared that the custom was to choose on the 29th September, and that the plaintiff was then chosen. Held to be sufficient to support the declaration. Bull. 209. Carth. 228. In declaring on parol contracts, the time alleged is wholly immaterial; it is matter of form but not of substance. 1 Stra. 21. 2 Stra. 806. Time in assumpsit is a mere circumstance, and forms no part of the issue. 1 Salk. 223. But it is otherwise on written contracts.

This action is founded on a mutual promise, which is a good consideration in assumpsit. Hob. 88. In cases of mutual covenants, one party may have his action before he has performed his part. 1 Ld. Ray. 124.

[*Sed per cur.* This law will not hold in Pennsylvania, since the Defalcation Act of 1705, (1 Dall. St. Laws, 65,) because the adverse party may give any bond, bill, receipt, account or bargain in evidence ; and so it has been heretofore ruled.]

Money advanced for procuring a commission in the marines; the purchaser after six months, being discovered to have worn a livery, was discharged; the money was decreed to be repaid with interest.

Ambl. 432. They also cited 1 Ld. Ray. 357, 620. 1 Salk. 29. Cowp. 199.

By the court. The day alleged in the declaration being variant from the day on which the promise was made, is no ground for ordering a non-suit. This appears very fully from the cases cited by the plaintiff's counsel. If the jury should find a special verdict in the terms of the declaration, (1 Stra. 22, and the cases were cited,) but with the alteration of the day, there could be no difficulty as to the court's rendering judgment thereon for the plaintiff. And even in criminal cases, it is a settled rule, that the day laid in the indictment is not material upon evidence. 2 Hawk. 434, cap. 46, § 32.

The remaining objections rest on facts, which it is not the province of the court to ascertain. If the plaintiff contemplated an increase of his money by the spoils of others, the original transaction was immoral, and he could not recover his debt from Savin, and consequently the defendant could not be substituted in his place. But the effects of credulity are almost incalculable. Even Lord Hale believed there were witches in the last century! How many ingenious and learned men have been ruined by their researches for the philosopher's stone, in order to transmute other metals into gold? How great was the general frenzy for South-sea stock in England, in the present century, when a share which cost 100l. was sold for 800l. and upwards? Have we not experienced events amongst ourselves within these few years past, as to scrip, now almost incredible? If therefore, the jury should be of opinion, that such was the plaintiff's infatuation or ignorance at the time, that he believed his money might be doubled without fraud, and that he and Savin were not in pari delicto, there would be no ground of defence by the latter against him.

So if the jury give credit to the witness, who swore that the defendant's promise, was grounded on the plaintiff's promise, the court will be supported by the evidence; and if they are further satisfied, that the view of the plaintiff in pursuing the impostor, was merely to get back his money, and that he entertained no idea of instituting a criminal prosecution against him, or of stopping it afterwards, the last exception would then also be obviated: otherwise not, in both instances.

These questions however the jury alone are competent to determine. Ex facto oritur jus.

In the course of the trial, it was proposed by the defendant's counsel, to ask one of the plaintiff's witnesses, whether he had not been committed to the gaol of Cumberland county as an ac-

complice of Savin? and Rex *v.* Edwards, 4 Term Rep. 440, was cited in support of the question propounded.

But the court thought there was impropriety in the question. The credit of a witness is only to be impeached by his general character, and not by charges of particular offences of which he has not been convicted. In the case relied on, the question was asked not of a witness, but of one who offered himself as bail for another indicted of grand larceny, whether he had not stood in the pillory for perjury; and on his answering in the affirmative, he was rejected.

Verdict *pro quer.* for 149*l.* 17*s.* 6*d.* damages.

Messrs. Clymer and Read, *pro quer.*

Messrs. Ingersoll, Hopkins and Fisher, *pro def.*

A motion was afterwards made for a new trial, and a rule to show cause obtained; but the argument coming on in December term 1799, the defendant's counsel discharged the rule.