## Commonwealth v. Arcurio, Appellant.

*Criminal law—Felonious entry—Peremptory challenge—Burden of proof—Charge—Witnesses—Credibility—Evidence—Prior arrest—Admissibility—Acts of July 9, 1901, P. L. 629; March 31, 1860, P. L. 427; March 31, 1860, P. L. 382, section 135 and 136, and its supplements April 22, 1863, P. L. 531 and March 18, 1901, P. L. 49.*

Under the Act of July 9, 1901, P. L. 629, in the trial of felonies, other than those triable exclusively in the Court of Oyer and Terminer, the Commonwealth and defendant are each entitled to eight peremptory challenges.

In the trial of an indictment on the count, among others, of felonious entry, defendant is entitled to only eight peremptory challenges. Felonious entry is not included among the crimes defined in the Criminal Procedure Act of 1860, P. L. 427, as being exclusively triable in the Court of Oyer and Terminer.

Where testimony volunteered by a witness, was not elicited by any special question and was not objected to by defendant at the time it was not reversible error for the court to decline to strike from the record all the testimony of such witness, especially when much of it was relevant and admissible.

An otherwise correct charge was not reversible because it did not state in identical words that the burden of proving defendant guilty beyond a reasonable doubt rested on the Commonwealth throughout the trial, if such was its plain import.

Where defendant's case rested on his alibi and character evidence an attempt to attack the credibility of a material witness in his behalf by the question whether she had been under arrest is improper and the admission of such a question is ground for a reversal.

Conviction of an infamous crime, i. e., a crime which at common

law would have rendered the witness incompetent or of a crime involving great moral turpitude, may be proved to impeach the credibility of the witness, but the court should not permit a question to the witness as to whether he has ever been arrested, incarcerated or indicted. These facts are immaterial, for even innocent persons are arrested and are subject to indictment.

Argued October 17, 1927. Appeal No. 5, April T., 1928, by defendant from judgment and sentence of O. and T. Indiana County, No. 2, September T., 1926, in the case of Commonwealth of Pennsylvania v. Peter Arcurio. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Indictment for felonious entry. Before LANGHAM, P. J.

The opinion of the Superior Court states the case.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence.

*Charles J. Margiotti,* and with him *B. A. Sciotto,* for appellant.

*L. E. Miller,* District Attorney, and with him *George J. Feit,* of *Peelor & Feit,* for appellee.

OPINION BY KELLER, J., March 2, 1928:

The indictment on which appellant was tried contained six counts: (1) Felonious entry (Act of March 13, 1901, P. L. 49); (2) larceny; (3) felonious assault and battery; (4) aggravated assault and battery; (5) simple assault and battery; and (6) wantonly pointing a fire arm (Act of May 8, 1876, P. L. 146). He was convicted on all the counts, but sentenced on only

the first and third. He assigns eleven specifications of error, which may be considered under seven heads.

(1) He complains of the court's refusal to allow him twenty peremptory challenges. By the Act of July 9, 1901, P. L. 629, it is provided that in the trial of misdemeanors and felonies triable exclusively in the Courts of Oyer and Terminer and general jail delivery the Commonwealth and the defendant shall each be entitled to twenty peremptory challenges; in the trial of felonies other than those triable exclusively in the Courts of Oyer and Terminer, etc., the Commonwealth and the defendant shall each be entitled to eight peremptory challenges. The Criminal Procedure Act of 1860 (March 31, 1860, P. L. 427) provides, inter alia, that the Courts of Oyer and Terminer shall have exclusive jurisdiction to try and punish all persons charged, inter alia, with burglary. But this refers to burglary as defined in the 135th section of the Criminal Code of 1860, (March 31, 1860, P. L. 382), not to felonious entry, as defined in section 136 of the Code and its supplements of April 22, 1863, P. L. 531, and March 13, 1901, P. L. 49. The first count in this indictment was clearly drawn under the Act of March 13, 1901, supra. It did not charge burglary, was not triable exclusively in the Court of Oyer and Terminer, and did not entitle the defendant to twenty peremptory challenges. That it was colloquially designated "burglary" on the back of the indictment did not affect the charge or enlarge the defendant's right of challenge.

(2) Complaint is made in one assignment of the refusal of the court below to strike out the testimony of Paul Smyers, Clair McGaughey and Harry Williams. This, of itself, constitutes a violation of our rules, (Rule 22), and would warrant our disregarding the assignment. Irrespective of this, however, the court below cannot be convicted of error on such a general assignment. Had defendant's counsel confined his motion to

so much of the testimony of Williams as related to the defendant's admission of his robbery of a bank in the west and his arrest and conviction for it, the court would no doubt have struck it out. It had been volunteered by the witness, was not elicited by any special question of the district attorney, and was not objected to by defendant at the time. Much of this witness' testimony, however, was relevant and admissible and, therefore, it was not reversible error for the court below to decline to strike from the record all that had been testified to by him: Com. v. Weiss, 284 Pa. 105, 110. While Smyers and McGaughey had corroborated Williams in certain features of his testimony, neither of them had said anything about the defendant's alleged admission of his robbery of a bank in the west, etc., and their evidence was not open to the same objection as Williams'.

(3)    The court very properly refused to permit McQuilken, the cashier of the bank which was robbed, to testify in chief that he had told the sheriff the afternoon of the robbery that he identified the defendant as the robber, though permitting him to state that he told the sheriff who it was that had robbed the bank, but not to name him. When, later, the cross-examination of McQuilken was resolved into an attempt to prove that his identification of Arcurio had not occurred until weeks after the robbery and was a recent fabrication, we think it was not error to permit the Commonwealth to show, on examination of the sheriff, that the identification had been made the day of the robbery and was in consonance with McQuilken's evidence on the trial.

(4)    The appellant makes too much of McQuilken's testimony as to his speaking guardedly in reference to accusing defendant of the crime. The witness was not referring to his usual manner of speaking, but only that in view of the gravity of the offense he was guarded in making public his accusations against the defendant.

(5) With respect to the judge's charge on the defense of alibi, we do not think it is, as a whole, open to the criticism that the testimony on this branch of the case was directed to be considered and disposed of separately and apart from the rest of the evidence, and if not deemed sufficient was, in effect, to be excluded from the case. "Proof of an alibi is as much a traverse of the crime charged as any other defense, and proof tending to establish it, though not clear, may, nevertheless, with other facts of the case, raise doubt enough to produce an acquittal": Turner v. Com., 86 Pa. 54, 74; Com. v. Andrews, 234 Pa. 597, 605. But if determined by the jury to be false, it may weigh against the defendant when considered with all the other evidence: Com. v. McMahon, 145 Pa. 413, 417. We do not think the use of the term, "subterfuge" in the discussion of this phase of the defense constituted reversible error. It is not as strong a word as "manufactured," which was used in Com. v. McMahon, supra, and held not to be error by the Supreme Court.

(6) The jury were definitely charged, in language so clear as not to be open to misconstruction, that the defendant came into court with the presumption of innocence in his favor and that he must be deemed innocent until he was proven guilty beyond a reasonable doubt; that if after a careful consideration of all the credible evidence in the case such a reasonable doubt of the guilt of defendant existed in the minds of the jury it was their duty under the law to give him the benefit of that doubt and acquit him. That the judge did not say in express words that the burden of proof never shifted from the Commonwealth is not ground for reversal: Com. v. DePalma, 268 Pa. 25, 29. In the cases relied upon by the appellant (Com. v. Norris, 87 Pa. Superior Ct. 66, 76; Com. v. Chester, 77 Pa. Superior Ct. 388; Com. v. Viscuso, 82 Pa. Superior Ct. 403), the instructions to the jury were erroneous and the cor-

rect rule was stated in the opinion of this court; but it
was not intended thereby to hold that an otherwise cor-
rect charge was reversible because it did not state in
identical words that the burden of proving a defend-
ant guilty beyond a reasonable doubt rested on the
Commonwealth throughout the trial, if such was its
plain import.

(7)   On mature consideration, we are obliged to sus-
tain the third assignment of error.   Mrs. Emma Os-
born, a material witness in support of defendant's alibi,
was allowed to be asked on cross-examination the fol-
lowing questions:  "Q.  At the time you were in Pitts-
burgh, you were there with an Italian?  You went there
with an Italian?  A.  I didn't go with the Italian.  Q.
Well you met him there?  A.  Yes.  Q.  And the two
of you were arrested together?  Objected to as incom-
petent, irrelevant and immaterial.  Objection over-
ruled.  Exception noted.  A.  We were."

While it is well settled in this State that a witness in
a criminal prosecution, not himself the defendant, may
be asked on cross-examination, for the purpose of af-
fecting his credibility, whether he has not been con-
victed of a felony or of a misdemeanor in the nature of
crimen falsi:  Com. v. Varano, 258 Pa. 446; Com. v.
Robzin, 78 Pa. Superior Ct. 290, 292, there is some con-
fusion of authority as to whether such a witness may
be cross-examined as to his previous arrest for crime.
The trend of the decisions of our Supreme Court is
against it.  As far back as the case of Stout v. Rassel,
2 Yeates 334, 338, it was proposed by the defendant's
counsel, to ask one of the plaintiff's witnesses
"whether he had not been committed to the gaol of
Cumberland County as an accomplice of Savin......
but the court thought there was impropriety in the
question.  The credit of a witness is only to be im-
peached by his general character, and not by charges
of particular offences of which he has not been con-

victed." A somewhat similar ruling was upheld in Elliott v. Boyles, 31 Pa. 65, 67, the court saying: "It would be absolutely intolerable that a man, by being brought into court as a witness, should be bound to submit all the acts of his life to the exposure of malice, under the pretence of testing his credibility." In Buck v. Com., 107 Pa. 486, defendant proposed to ask the prosecutor, a witness for the Commonwealth, "whether he [had] not been indicted and tried in this court for embezzlement, and this with a view to affect his credibility." It was objected to and ruled out. The Supreme Court said: "The question asked the witness was an improper one. It was the right of the District Attorney to object and ask the court to rule it out. It was an attempt to prove an alleged fact by incompetent evidence. The proper mode of proving a conviction for embezzlement, or any other crime, is the production of the record. It is the highest and best evidence." It will be noted that the writer of the opinion in the Supreme Court went beyond the question asked. The offer had not been to prove that the witness had been convicted of embezzlement, but that he had been "arrested and tried." The syllabus (4th) followed the opinion, stating, "It is not proper practice to ask a witness upon cross-examination whether he had been indicted and convicted of an offense, even for the purpose of affecting his credibility. The record is the only proper evidence." It was this statement of the court, as summarized in the syllabus, and not the ruling of the court on the question propounded, that was later overruled by the Supreme Court in Com. v. Racco, 225 Pa. 113. There the prisoner—it was before the passage of the Act of March 15, 1911, P. L. 20, which resulted as a consequence—was permitted to be asked on cross-examination to test his credibility, whether he had not been convicted and sentenced to prison for larceny, assault and battery and wounding, and for obtaining

money by false pretenses, to all of which he answered, No; and the allowance of the question was assigned as error. The Supreme Court said, speaking through Mr. Justice BROWN, afterwards Chief Justice: "Though courts in other jurisdictions and textwriters differ as to the right to ask a witness whether he had been convicted of a crime for the purpose of affecting his credibility, the rule as followed by the lower courts in our state since defendants in criminal cases have been competent witnesses, has been, according to the observation and experience of every member of this court, to allow such questions to be put to a defendant as were asked this prisoner on his cross-examination. The only exception now to be recalled is Com. v. Pioso, 19 Lanc. L. R. 145, in which the Court of Quarter Sessions of Lancaster County, following an expression of Paxson, J., in Buck v. Com., 107 Pa. 486, held that it was improper to ask the defendant whether he had not, a short time before, been convicted of a crime. In Buck v. Com. the question asked the witness was held to have been improper because if he had been convicted of embezzlement the proper evidence of that fact was the record. We do not now approve what was there said, and, if it is to be regarded as an expression of the law, it is overruled."

The opinion then proceeds: "The proper rule, followed by the court below, is laid down in Underhill on Criminal Evidence, Secs. 60 and 61: 'The accused, when testifying in his own behalf, waives many of the peculiar constitutional privileges which belong to him as one accused of crime ...... He may be questioned as to specific facts calculated to discredit him. Thus his previous arrest, or indictment, his conviction of a felony, a previous imprisonment in a penitentiary, or house of correction, his prior contradictory statements, disorderly actions, or the commission of offenses similar to that charged, attempts to bribe witnesses, or

simulation of insanity, may all be brought out by questions put to him on his cross-examination, to show what credit his evidence should receive."

We do not understand from this that the Supreme Court definitely committed itself to everything contained in the extract quoted from the text book referred to; but only to so much as applied to the case under consideration and upheld the action of the court below assigned for error; for immediately following the quotation, the opinion goes on: "If the record of the conviction of a crime by a witness is the only evidence to be received of that fact to affect his credibility, in many cases, of which the present is an illustration, his credibility could not be impeached, though it ought to be, for the record may be in a foreign state or country, and not obtainable in time to be used when found to be needed at the trial."

Following the Racco case, this court in Com. v. Doe, 79 Pa. Superior Ct. 162, 167, made use of the same expression from the textwriter, saying: "His previous arrest or indictment, his conviction of a felony, his previous imprisonment in a penitentiary may be brought out by questions put to him on cross-examination to show what credit his evidence should receive." But, again in that case, the question involved was not whether the witness, the defendant, could be asked on cross-examination whether he had been arrested before, but whether the record of his previous conviction of felony was properly received in evidence to affect his credibility, and it was held that it was. The Act of March 15, 1911, supra, was passed between the Racco and Doe cases, and forbade a defendant in a criminal case being cross-questioned as to his previous conviction for crime.

Recent pronouncements of the Supreme Court have been adverse to the right to question a witness as to his previous arrest. Thus in Com. v. Varano, 258 Pa.

442, 446, the court said: "A witness may be interrogated as to his conviction of such an offense as affects his credibility: Commonwealth v. Racco, 225 Pa. 113. But it is not proper practice to ask him as to his guilt of some alleged crime not connected with the case on trial and for which he was never convicted: Stout v. Rassel, 2 Yeates 334; Elliott v. Boyles, 31 Pa. 65." The same statement was reiterated in Marshall v. Carr, 271 Pa. 271, 274. In Com. v. Williams, 209 Pa. 529, the appellant, (defendant), in cross-examination of the witness, Betty Friday, asked, "Weren't you running a sporting house there?" and offered to follow with the question, "Whether or not she was running a house of ill repute in which liquor was sold and drunk contrary to law, and gambling was carried on, and to follow this further by showing by the witness herself that she is a married woman; that she does not live with her husband and that she has not lived with him for many years and to follow her back in her career for the purpose of identification and affecting her credibility and show what she has been doing for the last dozen years or thereabouts." The court said: "The question and offer were properly excluded. Such evidence was considered and decided to be inadmissible, in Com. v. Payne, 205 Pa. 101, a much stronger case than the present, for there the offer was to follow the questions with proof of reputation for truth and veracity. That case is in harmony with our own prior decisions, Gilchrist v. McKee, 4 Watts 380; Conroe v. Conroe, 47 Pa. 198; Moyer v. Moyer, 49 Pa. 210; Drown v. Allen, 91 Pa. 393; Com. v. Bubnis, 197 Pa. 542; and the better opinion elsewhere seems to be in the same line, though the authorities are not uniform." In Weiss et ux. v. London Guarantee & Accident Co., 285 Pa. 251, the latest pronouncement on the subject called to our attention, the court said: "The testimony of both plaintiffs and also that of Feinberg was dis-

credited by their bad records, each having been punished for infractions of the criminal laws: Mrs. Weiss for being an inmate of and also for keeping a sporting house, which misconduct occurred both before and after her marriage. The trial judge, however, properly sustained an objection to cross-examination as to her alleged more recent similar misconduct, for which she had not been prosecuted. The rule is that a witness may be asked as to his conviction of such crime as affects his credibility, but not as to his alleged violation of the criminal laws, disconnected with the case on trial, for which he was never convicted: Marshall v. Carr, 271 Pa. 271; Com. v. Varano, 258 Pa. 422; Com. v. Williams, 209 Pa. 529; Ramsey v. Johnson, 3 P. & W. 293; Stout v. Rassel, 2 Yeates 334; and see Com. v. Payne, 205 Pa. 101; Hoffman v. Kemerer, 44 Pa. 452.''

The expressions of this court on the subject prior to the Doe case were opposed to such questioning. In Com. v. Williams, 41 Pa. Superior Ct. 326, 341, speaking through President Judge RICE, the court said: ''It is not easy to see how the mere prior arrest of a witness upon a criminal charge can affect his credibility.'' In Com. v. Keegan, 70 Pa. Superior Ct. 436, 439, Judge TREXLER, speaking for the court, said: ''The defendants endeavored to cross-examine certain witnesses of the Commonwealth as to their previous arrest for crime. These were properly excluded, as strictly speaking, the questions were not properly framed. The mere arrest of a person does not affect his credibility.''

It is interesting to note that the extract from Underhill's Criminal Evidence quoted in the Racco case and incorporated into the opinion in the Doe case does not appear in the third edition of that work. On the contrary, as revised, the book now reads: ''The defendant may be questioned when he becomes a witness in

his own behalf as to specific acts to test his credibility. Thus his previous conviction of an offense, crime, or felony may be shown ...... So a previous imprisonment in a penitentiary, (unless the sentence and service is too remote), or house of correction, his prior contradictory statements, disorderly actions, or the commission of offenses similar to that charged, for example where they are contemporaneous and a part of the res gestae, attempts to bribe witnesses, or simulation of insanity, may all be brought out by questions put to him on his cross-examination to show what credit his evidence should receive": Sec. 115, pp. 131, 132; and later on: "The modern rule is that the conviction of an infamous crime, i. e., a crime which at common law would have rendered the witness incompetent or of a crime involving great moral turpitude, may be proved to impeach the credibility of the witness ...... But ...... the court [should not] permit a question to the witness as to whether he has ever been arrested, incarcerated, or indicted. These facts are immaterial, for even innocent persons are arrested and are subject to indictment" Sec. 387, p. 556. These extracts from the later edition are more in consonance with the discussion in 2 Wigmore on Evidence, (2nd Ed.) Secs. 982 and 983, pp. 365, 366 et seq.

We cannot say that the error was harmless. The defendant's case rested on his alibi and character evidence. Mrs. Osborn was a material witness. To discredit her testimony by this attack on her credibility may have done the defendant much harm.

The third assignment of error is sustained. The judgment is reversed and a venire facias de novo awarded.