## Commonwealth *v.* Williams, Appellant.

*Evidence—Cross-examination—Credibility of witness—Murder—Criminal law.*

On the trial of an indictment for murder it is proper to exclude a question propounded on cross-examination to a witness for the commonwealth "whether or not she was running a house of ill repute in which liquor was sold and drunk contrary to law, and gambling was carried on, and to follow this further by showing by the witness herself that she is a married woman; that she does not live with her husband, and that she has not lived with him for many years and to follow her back in her career for the purpose of identification and affecting her credibility."

*Criminal law—Murder—Trial—Separation of jury.*

A verdict of guilty in a murder trial will not be set aside because one of the jurors at one of the adjournments of the court thinking that he was allowed to go home separated himself from his fellows, but was brought back in a few minutes, and before he had left the courthouse, and testified that during his separation he had talked to no one, or heard any talk by any one about the case.

Argued May 23, 1904. Appeal, No. 130, Jan. T., 1904, by defendant, from judgment of O. & T. Clearfield County, Dec. T., 1903, No. 44, on verdict of guilty of murder of the first degree in case of Commonwealth v. John W. Williams, alias "Black Spot." Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Indictment for murder.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* among others were (1) rejection of offer quoted in the opinion of the Supreme Court; (6) in not granting a new trial because of the separation of the jury.

*A. L. Cole*, with him *Smith V. Wilson*, for appellant.

*William I. Swoope*, district attorney, for appellee, was not heard.

PER CURIAM, June 15, 1904:

None of the assignments of error have any substance.

Appellant in cross-examination of the witness Betty Friday

asked, " Weren't you running a sporting house there ? " and offered to follow with the question, " whether or not she was running a house of ill repute in which liquor was sold and drunk contrary to law, and gambling was carried on, and to follow this further by showing by the witness herself that she is a married woman ; that she does not live with her husband and that she has not lived with him for many years and to follow her back in her career for the purpose of identification and affecting her credibility and show what she has been doing for the last dozen years or thereabouts." The question and offer were properly excluded. Such evidence was considered and decided to be inadmissible, in Com. v. Payne, 205 Pa. 101, a much stronger case than the present, for there the offer was to follow the questions with proof of reputation for truth and veracity. That case is in harmony with our own prior decisions, Gilchrist v. McKee, 4 Watts, 380 ; Conroe v. Conroe, 47 Pa. 198 ; Moyer v. Moyer, 49 Pa. 210 ; Drown v. Allen, 91 Pa. 393 ; Com. v. Bubnis, 197 Pa. 542 ; and the better opinion elsewhere seems to be in the same line, though the authorities are not uniform. They are very fully collected in Kolb v. Union R. R. Co., 23 R. I. 72 (54 Lawyer's Rep. Annotated, 646) cited by the learned judge below in his opinion refusing a new trial.

The only other assignment of error that we need notice is the separation of the jury. The facts are thus reported by the learned judge below : " Upon the adjournment of court one of the jurors, through ignorance thought that he was allowed to go home until the meeting of court the next morning. He separated himself from his fellows and went to a water-closet. The two tipstaffs, who had been duly sworn and instructed not to allow the jury to separate, took the other eleven jurors to the jury room when it was immediately discovered that one of the jurors was missing. Search was made and he was discovered in the hall of the courthouse coming from the closet. He was called as a witness and testified that he had talked to no one or heard any talk by anyone about the case. He was separated from his fellows but for a few minutes, probably from three to five. We are convinced that this unfortunate incident occurred entirely through the ignorance of the juror and the carelessness of the officers having the jury in charge,

and that no harm was done to the defendant nor was he in any manner prejudiced thereby."

Because of their own long standing familiarity with the circumstances under which the jury are required to keep together, lawyers and judges are perhaps apt to presume the same knowledge on the part of the jurors, to whom however the distinctions between the rules in murder and other cases are unknown. In view of the recurrence of questions of this kind it is highly desirable that all juries shall be clearly and specifically instructed when to avoid separation, and generally as to their conduct during the trial.

In the present case the separation was carefully investigated by the learned judge below, and it was affirmatively shown that the prisoner was not in any manner prejudiced by it. The case is therefore within the authority of Com. v. Cressinger, 193 Pa. 326 (338).

Judgment affirmed and record remitted to the court of oyer and terminer for purpose of execution.