Commonwealth *v.* Quaranta, Appellant.

Argued October 1, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Morton Witkin,* with him *Otto Kraus, Jr.,* and *L. Wallace Egan,* for appellant.—The court erred in refusing to permit counsel, in the opening address to the jury, to refer to the acquittals of Scopoletti and Festa of the same murder and of the then exclusion by the court of all efforts of testimony to the same effect: Com. v. Polise, 81 Pa. Superior Ct. 69; Com. v. Friedman, 86 Pa. Superior Ct. 488; York Boro. v. Forscht, 23 Pa. 391.

When a man is on trial for his life, the law permits a liberality of proof on his behalf: Com. v. Loomis, 270 Pa. 254.

Bias and interest have always been held to be material and not collateral and can be established by the testimony of other witnesses despite denial by the witness on the stand: Gaines v. Com., 50 Pa. 319; Com. v. Racco, 225 Pa. 113; Com. v. Coontz, 288 Pa. 74; Com. v. Santos, 275 Pa. 515; Dietrich v. Davis, 274 Pa. 213.

There was improper restriction of cross-examination: Glenn v. Phila., etc., Co., 206 Pa. 135; Com. v. Gibson, 275 Pa. 338.

*Charles F. Kelley,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee.— Adjudications between strangers, public acts affecting strangers, or in which strangers are concerned, are to be regarded as hearsay; such evidence is also inadmissible as res inter alios acta.

Any possible question of error was corrected at the conclusion of the trial judge's charge: Com. v. Newman, 276 Pa. 534; Com. v. Weinberg, 276 Pa. 255.

A party may not remain silent and take chances on a verdict and afterwards complain of matters which, if erroneous, the court would have corrected: Com. v. Razmus, 210 Pa. 609; Com. v. Pava, 268 Pa. 520; Com. v. Meleski, 278 Pa. 383; Com. v. Winter, 289 Pa. 284.

OPINION BY MR. JUSTICE KEPHART, November 26, 1928:

On the afternoon of Decoration Day, 1927, four men were standing on the sidewalk of Christian Street, just west of Eighth Street, in Philadelphia, when an automobile dashed around the corner. As it passed the group of men, a fusillade of shots from sawed-off shot guns came from the car toward this group, and Vincent Cocozza fell, mortally wounded. The same car and its occupants had a few seconds before killed Joseph Zanghi as he was passing on Eighth Street, a short distance around the corner from the spot where Cocozza fell. Both homicides were undoubtedly the result of what is known as gang warfare, and came about from a feud or jealousy in the bootlegging or illegal drug business. The movement of the car and identification of defendant were shown by direct and positive evidence. The intent to kill was apparent, and the record shows the Commonwealth made out every element of first degree murder. This the jury found, fixing life imprisonment as the penalty.

After the Commonwealth's case had closed, defendant's counsel, at side bar, stated to the court that he desired, in the opening speech to the jury and in the presentation of evidence thereafter, to inform the jury and to prove that Festa and Scopoletti, referred to by the Commonwealth's witnesses as being in the murder car at the time of the homicide, had been tried on the charge of murder and acquitted, they having been jointly indicted with the defendant then on trial. The court be-

low ruled that the fact of conviction or acquittal of other persons was not evidence in the case then on trial, and instructed counsel to make no reference to that fact in his opening speech; the court then excluded all offers of testimony that might be made bearing thereon.

It will be noticed that the above circumstance is a rather unusual method of procedure, as it combined an offer of evidence before the opening address and an offer as to what was to be said in the opening address to the jury outlining the defense. Courts may properly restrict counsel, in opening, by refusing to permit questionable features of evidence to be referred to, holding counsel to a narrative of the defense, reserving further consideration of the matter until it is offered in evidence. The court may then determine its admissibility, and, if it may be received, no harm is done to the accused in refusing to permit reference to be made to it in the opening, as the jury will later be fully aware of the facts. If the evidence is inadmissible, then, by the action taken, the Commonwealth is not prejudiced. The court was not in error in restricting counsel's remarks.

The second branch of the offer is more difficult. The court below did not treat the offer of evidence as out of place, nor as containing more than one subject. It would not be objectionable on that ground (see Com. v. Colandro, 231 Pa. 343, 348), but the trial judge attempted to rule on testimony that might be offered after the case opened. A trial judge should not anticipate an offer of evidence, and, by thus acting, attempt to close the door to such offer being placed regularly in the record. An appellate court is entitled to know the accused's theory of the case, and the evidence or offers bearing on it. Counsel may, notwithstanding the ruling, place his offers on record and demand a specific ruling so that exception may be had if the evidence is rejected.

Counsel did not state any definite purpose for which the proof was offered. It was to show generally that two men jointly indicted with defendant, and supposed

to have been riding with him when the murder occurred, were tried for the crime and acquitted. It is quite evident their acquittal or conviction would be proof neither for nor against the defendant then on trial. Commonwealth's witnesses might have been mistaken as to the identity of the persons who were in the car. To have admitted the evidence generally would have permitted defendant's counsel a wide latitude in his closing remarks. He could urge with much assurance that, another jury having cleared these two men of any complicity in the murder, this jury should accept that verdict as conclusive of defendant's innocence. Defendant urges that those verdicts are conclusive, in the present case, of the facts relating to these two men, with a corresponding benefit to the accused. The judgment in a criminal case is not res judicata of the facts on which that case was based, where such facts or a part of them are in dispute in another action between different parties. The verdicts are not admissible as substantive proof in the second case; as to it the evidence would be res inter alios acta. "Evidence of the acquittal of one jointly indicted with defendant is not admissible on behalf of defendant as tending to establish his innocence. And this is true even though the evidence tends to show that defendant on trial was an accessory before the fact, where the statute has abolished the distinction between principal and accessory": 16 Corpus Juris, section 1342, page 670. See also Com. v. Coontz, 288 Pa. 74.

But it is argued that the evidence has further evidential value beyond establishing the facts in dispute in the cases in which the witnesses were acquitted, in that it was proper testimony to show that the witnesses had no bias or interest.

The Commonwealth's evidence tended to show that the witnesses were accomplices. Standing alone this fact clearly revealed an intense interest by them in the result of the trial of defendant. Without explanation, their complicity could be kept prominently before the

jury throughout the trial, impairing, if not destroying, the value of their testimony. "It bears against a witness's credibility that he is an accomplice in the crime charged. When the coindictee testifies for the accused, his situation here may also be considered as tempting him to exonerate the other accused and thus help toward his own freedom": 2 Wigmore on Evidence, section 967. The fact of acquittal could be used to show want of personal interest. It was a very material circumstance in defendant's case. "If the credibility of a witness is attacked by evidence that he has been charged with the commission of a crime, he may in rebuttal prove that he has been acquitted of that charge": 28 R. C. L. 649, section 233; Jackson v. State, 33 Tex. Cr. 281, 26 S. W. 194. The use of the evidence should be carefully limited to this purpose by the trial judge, and its connection with the case explained to the jury.

Furthermore, the fact of acquittal of a witness, as shown by verdict and judgment, is competent proof to affect the credibility of eye witnesses who have testified to witness's presence at the homicide and participation therein. The evidence was, however, not offered for either of these purposes, and we cannot read such purpose into the record. The general offer, without the statement of a lawful purpose, was clearly inadmissible.

The cross-examination of witnesses is largely within the sound discretion of the trial court (Glenn v. Traction Co., 206 Pa. 135), and, reading the entire record, we are not convinced the court below abused its discretion in refusing to permit the cross-examination complained of in the various assignments of error.

While defendant was on the stand, at his counsel's request he admitted having been convicted of certain other crimes; when cross-examined by the district attorney, he was interrogated as to another crime for which he had been convicted. This evidence was objected to, first, because the Act of March 15, 1911, P. L. 20, prevented it, the defendant not having put his good

character in evidence. Defendant assumes that if he shows a good character minus so much bad character, the Commonwealth is prevented from proving a still further bad character by showing as false his testimony in respect to other crimes committed. Defendant voluntarily stepped outside the Act of 1911 when he narrated his criminal record, thus placing his character in evidence. His true character as shown by the conviction of an infamous offense was proper as affecting veracity, as well as a proper cross-examination on his own testimony. Com. v. Gibson, 275 Pa. 338, relied on, is, therefore, not in point.

A second reason is more serious. May a defendant's testimony be impeached on cross-examination by exposing his character affected by the conviction of a crime for which he has been pardoned? Appellant urges that no question could be asked about the pardoned offense that would affect his character.

The testimony of a witness may be impeached as a matter of right by showing his relations with the party calling him, his zeal or bias as shown by his conduct, or improper efforts to influence witnesses or jurors: Cameron v. Montgomery, 13 S. & R. 128; Beck v. Hood, 185 Pa. 32, 38. When a party becomes a witness for himself, he stands in no better position than any other witness not a party: Beck v. Hood, supra; Com. v. Racco, 225 Pa. 113.

Conduct derogatory to the witness's character for veracity may be proved by showing that he has been convicted of an infamous offense. No collateral issue of fact is thus raised, as the record establishes the fact. But every offense or crime under the law is not relevant to prove one's character for veracity, and, as it is not permissible to show a general bad character because of the abuse that could be made of it by the prosecution (Gilchrist v. McKee, 4 Watts 380; Com. v. Payne, 205 Pa. 101, 104; Com. v. Williams, 209 Pa. 529, 530; Weiss v. London Guarantee & Accident Co., Ltd., 285 Pa. 251,

255; Marshall v. Carr, 271 Pa. 271), the only crimes admissible to attack veracity are such as affect credibility and refer to the conviction of a felony or misdemeanor in the nature of crimen falsi: Com. v. Varano, 258 Pa. 442, 446; Com. v. Robzin, 78 Pa. Superior Ct. 292; Com. v. Arcurio, 92 Pa. Superior Ct. 404, 409; 2 Wigmore on Evidence, sections 977-989.

In determining what are relevant crimes to affect credibility, the question is ordinarily for the trial judge, and where defendant is the witness, the trial judge is vested with a large discretion as to relevancy, especially if defendant is known to be of criminal habit: Com. v. Racco, supra; Com. v. Payne, 242 Pa. 394, 401; Com. v. Dorst, 285 Pa. 232; Com. v. Dietrich, 65 Pa. Superior Ct. 599. Care should be taken not to confuse a cross-examination to show motive or affect credibility as to incidents that may be of criminal nature, but connected with the crime on trial. See Com. v. Danarowitch, 294 Pa. 190.

Mere attempts, arrests and indictments, without conviction, are not subjects of cross-examination. These raise independent issues, and do not assert the fact, as a conviction does: See 2 Wigmore on Evidence, supra; Com. v. Varano, supra; Com. v. Arcurio, supra; Com. v. Keegan, 70 Pa. Superior Ct. 436, 439. These general principles are stated so that a proper application of the effect of a pardon may be made.

A pardon is an act of mercy or grace from a governing authority. In effect, it is a remission of guilt, exempting the individual from punishment for the offense: See Words and Phrases, volume 6, page 5168; Ex Parte Garland, 71 U. S. 333; 20 R. C. L. 556, and cases cited. It obliterates every stain which the law attached to the offender, placing him where he stood before he committed the pardoned offenses: U. S. v. Athens Armory, 35 Ga. 344, 362, 24 Fed. Cas. 878, 884.

A full pardon releases the punishment and blots out the existence of guilt, so that, in the eyes of the law, the offender is as innocent as if he had never committed

the offense. It removes the penalties and legal disabilities, restoring him to all his civil rights: Diehl v. Rodgers, 169 Pa. 316; Com. v. House, 10 Pa. Superior Ct. 259, 265. In some jurisdictions it has been said that a pardon denies to any officer of the State the right to impute to the pardoned one the fact of conviction: Jones v. Alcorn Co., 56 Miss. 766, 769; Knote v. U. S., 95 U. S. 149; Edwards v. Com., 78 Va. 39, 41; Knapp v. Thomas, 39 Ohio 377, 395; Young v. Young, 61 Texas 191, 193; 16 L. R. A. (N. S.) 272; 11 L. R. A. (N. S.) 865.

One of the incidents of conviction of a crime affecting veracity is that thereafter the testimony of the convicted, in a judicial proceeding, may be discredited by the fact of conviction. There is, also, the viewpoint of friends and neighbors. A pardon does not ordinarily reach them; though society, after exacting its toll in the first instance, when its responsible head subsequently extends mercy, ought not to continue this form of incorporeal punishment. In Diehl v. Rodgers, supra, Mr. Justice MITCHELL states that a person pardoned is restored "to his civil rights, as though he had never committed the offense." The question in that case was the competency as a witness of a pardoned criminal. Pardoned offenders are "thereby rendered competent witnesses......, their credit is still to be left to the jury." (p. 319.) He "was a competent witness (but) his credibility was for the jury" "if either party had asked that it be submitted." We hold, in accordance with the preponderant view, that, whenever one who has been pardoned of a crime such as would ordinarily affect credibility, *testifies as a defendant in a criminal case,* the judgment of conviction may be inquired into, and the issuance of the pardon may also be shown: 20 R. C. L. 567; Curtis v. Cochran, 50 N. H. 242; Dudley v. State, 24 Tex. App. 163; 2 Wigmore on Evidence, 980; 47 L. R. A. (N. S.) 215.

In charging the jury, the court below said, if you are satisfied "beyond a reasonable doubt that the defendant was not in the automobile, and was not a party to what

was done in connection with the killing of Cocozza," the verdict should be not guilty. When the testimony shows the verdict in the case to be a just one, the errors in the charge of the court that will justify a reversal must be such that the inevitable effect would be to prejudice the jury or leave them without a requisite legal guide in a matter fundamental to the case. Standing alone, this instruction is manifestly erroneous on one of the fundamentals of criminal trials; it suggests that the prisoner must establish the facts constituting his defense "beyond a reasonable doubt." That is not the law. But, when the excerpt is taken with the entire charge, it is plain the jury must have thoroughly understood that no such burden rested on defendant. The instruction complained of occurred at the beginning of the charge; afterward the trial judge told the jury that, even where an affirmative defense was set up, the only burden on defendant was to establish his position "by a fair preponderance of the evidence"; and in connection with the presence of defendant in the automobile, he told the jurors they were to decide that point on "the fair preponderance of the evidence." Under such circumstances, where a mistake in the charge was amply corrected by subsequent instructions, the verdict being a just one, we will not reverse because of a single badly phrased instruction. As recently stated by us in Com. v. Daily (No. 2), 280 Pa. 59, 64-5, "where the evidence against defendant...... leaves no doubt......as to the justice of his conviction, a [judicial] slip of the tongue......should not cause a reversal unless the reviewing court feels, not simply that the mistake in question possibly influenced the jury against defendant, but that it is strongly probable the verdict rendered reflects such adverse influence." See also Com. v. Marshall, 287 Pa. 512, 523-4; Com. v. Dilsworth, 289 Pa. 498, 507-8.

The complaints as to other features of the charge are not of a character to call for discussion; we have examined all and find them without merit.

276

The assignments of error are all overruled, the judgment is affirmed, and the record is remitted to the court below for the purpose of execution.