Lyons et ux. v. Gantz

2

*M. E. Cusick*, for plaintiffs.

*C. E. Brockway* and *Leo H. McKay*, for defendant.

ROWLEY, J., April 13, 1939.—Plaintiffs brought an action to recover damages alleged to have been sustained when an automobile owned and operated by plaintiff husband collided with a motor truck owned and operated by defendant. . . .

The jury found that the collision was due to the negligence of defendant and the contributory negligence of the husband plaintiff, and awarded the wife plaintiff $600.

Defendant moved for judgment n. o. v. and for a new trial. In support of these motions defendant presents four propositions . . .:

3. The third proposition advanced by defendant, which is urged only in support of the motion for a new trial, is that the cross-examination of the witness Margaret Richards was improper.

In the course of her cross-examination this witness was interrogated as follows:

"Q. You were also known as Betty Smith in 1932?

A. No.

Q. Do you want to state under oath, to this court and jury, that you were not known as Betty Smith?

A. I was not.

Q. Isn't it a fact that you went to Alderman Lewis' office on June 20, 1932?

A. No.

Q. Isn't it a fact that you went there and made an information against one Donald Ewalt?

A. No.

Q. Isn't it a fact that you charged him with fornication and bastardy?

A. No.

Q. Isn't it a fact you made that charge while you were still the wife of Raymond Hogue?

A. No."

(While no objection was offered to these specific interrogatories, we shall treat the objection made to the preceding question as also pertaining hereto.)

The cross-examination continued:

"Q. When did you marry Raymond Hogue?

A. 1931, December 16th.

Q. Isn't it a fact that you went to Squire Phipp's office, at the time you married Raymond Hogue and charged him with being the father of your unborn child?

A. No.

Q. You want the jury to believe that?

A. Absolutely."

4. Defendant's third and fourth propositions are closely related, hence we shall consider them together. The fourth proposition, also offered in support of the motion for a new trial is "The admission of the testimony of Alderman Lewis and of Raymond Hogue was error."

The material parts of the testimony of Hogue are:

"Q. Were you, at one time, married to Margaret Calvin?

A. Yes sir.

Q. Who is now Margaret Richards?

A. Yes sir.

Q. And did you marry Mrs. Margaret Calvin in the office of Squire Phipps of Sharon?

A. Yes sir.

Q. And at the time this marriage was performed, or just immediately before it, were you threatened with prosecution for fornication and bastardy if you did not marry Margaret Calvin.

A. Yes sir.

Q. Is that true?

A. Yes sir.

Q. And you were charged with being the father of her unborn child in the office of Squire Phipps?

A. Yes sir."

If the examination merely proposed to establish that the witness had made an information charging a man, whom she married immediately thereafter, with the paternity of her unborn child, we should have excluded the question for the reason that the enquiry would not, in our opinion, bear upon the question of credibility. Notwithstanding that her complaint was an admission of fornication upon her part, such misconduct argued nothing as to her veracity. Furthermore, the enquiry would tend to unnecessarily disgrace or degrade the witness.

It is to be observed, however, that before this point had been reached in her cross-examination the witness had denied that she was known as Betty Smith in 1932, and had also denied that she had made an information charging Donald Ewalt with fornication and bastardy while she was the wife of Raymond Hogue.

The court, over defendant's objection, permitted Alderman Lewis to testify that the witness Margaret Richards on June 20, 1932, while she was the wife of Raymond Hogue, made an information before the alderman charging one Donald Ewalt with fornication and bastardy. The alderman testified also that the witness signed the information in the name Betty Smith, and produced the information.

Such an information would constitute a sworn admission that complainant had committed the crime of adultery.

Passing for the moment the question whether adultery by a female witness is in the nature of crimen falsi, we are inclined to hold that the identity of the witness was a proper matter for cross-examination. When, therefore, she denied that she had been known as Betty Smith, she was not testifying to a collateral or irrelevant matter, which concluded the cross-examiner. Consequently, it was proper to prove in rebuttal that the witness had in fact used the name Betty Smith in making a written declaration under oath in a proceeding before the alderman. If the rebutting proof disclosed that the witness—under her own sworn declaration—had committed a crime, that circumstance would not be a sufficient reason for excluding the proof.

If complaint be made that upon cross-examination the witness was interrogated regarding an information made by her before the alderman, the answer is that in order to prepare the way for contradiction as to the name, the cross-examiner was under obligation to direct the attention of the witness to the particular time, place, and accompanying circumstances of the use of the name of Betty Smith.

It must be conceded that where a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question and it is conclusive against such party: Conrad, Executrix, v. Werner, 94 Pa. Superior Ct. 37. Nevertheless, we repeat that the identity of a witness cannot be said to involve an irrelevant or collateral matter for the credibility of the witness is directly in issue.

For the reason hereinbefore stated, we are of the opinion that the cross-examination of the witness Margaret Richards and the testimony of Alderman Lewis were properly admitted; nevertheless, this particular testimony and the testimony of Raymond Hogue seem to require

some discussion of the question when the misconduct of a witness is admissible to affect his credibility.

To correctly understand and properly apply the rules limiting proof of misconduct, it is necessary to distinguish between the interrogation of a mere witness and the interrogation of a defendant in a criminal prosecution.

It is also necessary to distinguish between misconduct which the law declares to be a crime and other misconduct. It is further necessary to distinguish between the commission of a felony or a misdemeanor of the crimen falsi type. It is further necessary to distinguish between an arrest or indictment and a conviction.

Much confusion has arisen because of a misguided effort to apply the general rule in a case which calls for application of the exception.

The general rule is stated in Berliner v. Schoenberg et al., 117 Pa. Superior Ct. 254:

". . . we believe it to be . . . well settled in Pennsylvania that a witness, *subject to an exception hereafter referred to*, may not be impeached by showing particular instances of misconduct disconnected with and collateral to the issue being tried, whether disclosed by cross-examination or extrinsic proofs . . . it has long been the rule in Pennsylvania . . . that a witness may not even be cross-examined as to such former acts of misconduct: Stout v. Rassel, 2 Yeates 334; Elliott v. Boyles, 31 Pa. 65; Com. v. Williams, 209 Pa. 529 . . . Com. v. Payne, 205 Pa. 101 . . . Marshall v. Carr, 271 Pa. 271" (also Commonwealth v. Varano, 258 Pa. 442).

Neither a party nor a witness may be impeached by evidence involving collateral matters.

It is important to observe that the foregoing is the statement of a general rule to which there is a well-defined exception. It is, therefore, not accurate to say that a witness may not be impeached by evidence involving collateral matters. In a proper case, express provision for proof of such collateral matters is made in the exception

to the general rule, which exception may be stated as follows:

"The general rule is subject to the exception that a witness may be interrogated as to his *conviction* and sentence for such crimes as affect his credibility (Com. v. Racco, supra [225 Pa. 113]), modified to some extent as to defendants charged with any crime by the Act of March 15, 1911, P. L. 20 (19 PS §711); but even a defendant may still be impeached by introduction of a record of his conviction and sentence for certain crimes: Com. v. Doe, 79 Pa. Superior Ct. 162": Berliner v. Shoenberg et al., supra, p. 261.

It thus appears that interrogation as to the misconduct of a witness is not to be excluded even though such misconduct be collateral to the litigated question, if the misconduct amount to a crime: Commonwealth v. Racco, 225 Pa. 113. But such evidence is not permissible merely because the enquiry pertains to a crime. A witness may not be asked upon cross-examination if he had been arrested: Commonwealth v. Arcurio, 92 Pa. Superior Ct. 404.

"It is not easy to see how the mere prior arrest of a witness upon a criminal charge can affect his credibility": Commonwealth v. Williams, 41 Pa. Superior Ct. 326, 341.

"The mere arrest of a person does not affect his credibility": Commonwealth v. Keegan (No. 1), 70 Pa. Superior Ct. 436.

"Mere attempts, arrests and indictments, without conviction, are not subjects of cross-examination. These raise independent issues, and do not assert the fact, as a conviction does": Commonwealth v. Quaranta, 295 Pa. 264, 273.

But if the misconduct pertains to the subject of the trial in progress, cross-examination with respect thereto is permissible notwithstanding there has been no conviction. For example, see Commonwealth v. Alensky, 118 Pa. Superior Ct. 106.

Helen Lyons, the wife plaintiff, testified that she suffered a miscarriage as a result of defendant's collision with the automobile in which she was riding. The testimony of the witness Margaret Richards was confined to her statement that Helen Lyons had told her she was taking medicine to produce an abortion. The character of this testimony rendered the matter of her veracity peculiarly pertinent.

Examination of the witness Margaret Richards, and the attempted contradiction by Alderman Lewis, on the information made by her charging Ewalt with fornication and bastardy, raises two questions: (*a*) Was her written declaration under oath equivalent to a conviction; if so, (*b*) is adultery by a female such an offense as affects her credibility?

(*a*) It goes without saying that it is the criminal act of the witness which affects his credibility. The theory is that the lack of moral integrity reflected by the criminal conduct is inconsistent with veracity. The crime is not rendered more reprehensible by conviction, nor does the fact of conviction add anything to the crime as an indicator of the morality of the offender.

Conviction is made a condition to the admission of the evidence because conviction establishes the fact, and does not raise an independent issue of the guilt of the witness. Then, too, if the rule were otherwise the veracity of any witness might be impugned by a baseless enquiry as to his arrest.

In Commonwealth v. Payne, 205 Pa. 101, the court refused to permit proof of the general reputation of the witness. Doubtless refusal was predicated upon the fact that such proof could not establish the fact (as a conviction does), but would raise another issue for the jury. (In Commonwealth v. Payne, supra, the offer included proof of the general reputation for truth and veracity which is admissible by express provision of law whereas general reputation as to other traits of character, such

as chastity, etc., is not included as a basis for attack upon the credibility of a witness.)

In Commonwealth v. Williams, 209 Pa. 529, the question whether or not the witness was running a house of ill repute in which liquor was sold contrary to law and gambling was carried on, was excluded as it did not purport to show a conviction. To like effect are Ramsey et al., Execs., v. Johnson, 3 P. & W. 293, Hoffman v. Kemerer, 44 Pa. 452, and Commonwealth v. Shanor, 29 Pa. Superior Ct. 358.

Clearly the question would have presented to the jury the enquiry whether the *witness* had committed a crime, as well as the principal question whether *defendant* Williams had committed a crime. Thus the jury would in effect be asked to try two individuals upon entirely unrelated charges.

In Commonwealth v. Fotti, 93 Pa. Superior Ct. 365, the court reversed the trial court for permitting the Commonwealth to ask defendant's witness a question which the Superior Court said "accused the witness of the commission of offenses, and interrogated her as to her arrest for crimes, of which it was not shown she had been convicted".

We have found no authority upon the question whether the information sworn to by the witness is equivalent to a conviction. It would seem that her written declaration under oath established as clearly as a conviction by a jury could do so, that she had committed adultery, especially where the written declaration was produced by the alderman.

This particular question is a perplexing one, but, under the peculiar circumstances, in the absence of authority to the contrary, a proper regard for the rights of the litigants seems to demand admission of the evidence. To have excluded from the consideration of the jury the apparently reprehensible misconduct of the witness would have been to ignore the vital place of veracity in a judicial proceeding.

In Marshall v. Carr, 271 Pa. 271, the Supreme Court reversed the judgment where defendant was asked if he had not cohabited illicitly with a woman some 26 years previously. It is to be noted that the witness in that case was a party. The Supreme Court apparently found that the question jeopardized his suit. It may well be that the same conclusion would not have been reached by the Supreme Court if the enquiry had been addressed to a mere witness.

The question there was somewhat analogous to a question put to a defendant in a criminal case regarding a charge other than the one upon which he is being tried.

But the court in Marshall v. Carr, supra, declined to decide whether such misconduct affected credibility, and declared that if such cross-examination were to be permitted "it should, by analogy . . . be confined to misconduct of a comparatively recent date".

Marshall v. Carr may be authority for exclusion of the testimony regarding the information wherein Margaret Richards charged her future husband with fornication and bastardy, but in our opinion the information against Ewalt involved more grievous misconduct than was shown in Marshall v. Carr, and, consequently, bore more directly upon credibility.

It might seem that the admission of the misconduct by the witness in Marshall v. Carr obviated the objection that no conviction was shown; however, the rule ought not to depend upon the answer of the witness for the propriety of the question is to be determined before answer. The authorities cited therein indicate that the decision in Marshall v. Carr rests largely upon absence of a conviction.

Previous to Commonwealth v. Racco, 225 Pa. 113, it had been held that a witness might not be asked as to his conviction of crime. A contrary rule was adopted in Commonwealth v. Racco, which was approved in Commonwealth v. Payne, 242 Pa. 394, and in Commonwealth v. Millman, 88 Pa. Superior Ct. 142. It was held in the

Payne case that it was not necessary to produce and offer the record of conviction.

In Berliner v. Schoenberg et al., supra, it was held (p. 262):

". . . an adjudication or finding in a civil action against the contention of a party which even contradicts statements which he may have made on the trial of the case is not to be received as a substitute for conviction and sentence in a criminal action for the purpose of impeachment."

It was the early rule that "character" means reputation as distinguished from disposition. Character, it was said, grows out of particular acts but is not proved by them, since a person may, under the stress of special circumstances, do a certain thing which is contrary to his ordinary disposition and practice. It was then held that the established method of proving character is by showing the general reputation of the witness with respect to the particular characteristic or trait. These principles were declared in Hoffman v. Kemerer, 44 Pa. 452, the court ruling that an assault upon character must be made through reputation. In Matusak v. Kulczewski, 295 Pa. 208, Mr. Justice Kephart held that an attack upon plaintiff's case (an action for alienation of affections) might be either actual or reputed character, or both. The justice noted that our later cases indicated a trend away from Hoffman v. Kemerer.

(b) Assuming for the moment that the sworn complaint of the witness—necessarily including a confession of adultery upon her part—was equivalent to a conviction, the question remains whether adultery by a female witness is an offense which affects her credibility. In Commonwealth v. Quaranta, 295 Pa. 264, it was held:

"In determining what are relevant crimes to affect credibility, the question is ordinarily for the trial judge".

In Weiss et ux. v. London Guarantee & Accident Co., Ltd., 285 Pa. 251, the court said (p. 255):

"The testimony of both plaintiffs and also that of Feinberg was discredited by their bad records, *each having been punished* for infractions of the criminal laws: Mrs. Weiss for being an inmate of and also for keeping a sporting house, which misconduct occurred both before and after her marriage (this was an action to recover for an alleged loss under a policy of insurance against burglary). The trial judge, however, properly sustained an objection to cross-examination as to her alleged more recent similar misconduct, for which *she had not been prosecuted.*" (Italics supplied.)

In Commonwealth v. Quaranta, 295 Pa. 264, the court said (p. 272) :

"But every offense or crime under the law is not relevant to prove one's character for veracity, and, as it is not permissible to show a general bad character because of the abuse that could be made of it by the prosecution . . . the only crimes admissible to attack veracity are such as affect credibility and refer to the conviction of a felony or misdemeanor in the nature of crimen falsi".

In our opinion there are persuasive reasons for treating the sworn admission of the witness as equivalent to a conviction, and, under the peculiar circumstances, her misconduct would seem to bear quite directly upon her veracity. However, in view of our conclusion, hereinbefore expressed, that the examination of Margaret Richards and Alderman Lewis was proper as bearing upon the question of her identity, we are not called upon to decide whether her information was tantamount to a conviction, or whether adultery by a female witness affects her credibility.

We are of the opinion, nevertheless, that it was error to permit cross-examination of the witness as to her charge of fornication and bastardy against the man whom she immediately married, both for the reason that her indirect admission of fornication did not affect her credibility and for the further reason that the question tended to expose her to shame and contempt.

It is altogether likely that admission of the cross-examination (and the rebutting testimony), as to the charge against Hogue, did defendant no harm in view of the admission of evidence of the more grievous misconduct of the witness with Ewalt. Nevertheless, we are convinced that such evidence was improperly received and that a new trial must be granted for that reason.

In our opinion, the evidence clearly supported the verdict which exonerated the wife plaintiff of contributory negligence, consequently the motion for judgment n. o. v. must be refused.

### Order

And now, April 13, 1939, this matter came on for hearing, whereupon, after due consideration, it is ordered, adjudged, and decreed that defendant's motion for judgment n. o. v. be overruled; and it is further ordered, adjudged, and decreed that a new trial be awarded.