Commonwealth *v.* Farley, Appellant.

Commonwealth *v.* Bakey, Appellant.

Argued September 25, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Lemuel B. Schofield,* with him *John J. Gilbride, Jr.,* and *Francis Shunk Brown, 3rd,* for appellants.

*Colbert C. McClain,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY RHODES, P. J., January 12, 1951:

Defendants, Augustus Farley and William Bakey, have appealed from convictions and sentences on charges of burglary and armed robbery. The jury's verdict established that the two defendants, with an un-

identified confederate, entered the West Philadelphia branch of Abbotts Dairies, Inc., located at 3416 Lancaster Avenue, Philadelphia, at 7:30 on the evening of December 20, 1949, held up three employes who were present at the time, and escaped with approximately $40,000; $24,000 being in cash and the remainder in checks.

Defendants were found guilty by a jury, at a joint trial, on four bills of indictment: (1) Conspiracy to assault with intent to rob, etc.; (2) burglary; (3) armed robbery; (4) carrying concealed deadly weapon and unlawfully carrying firearms without a license. The court sentenced each defendant to consecutive terms of not less than ten years nor more than twenty years in the Eastern State Penitentiary on the burglary and armed robbery convictions. Although defendants have taken separate appeals from each sentence, the questions raised can be disposed of in this opinion. Defendants do not question the sufficiency of the Commonwealth's evidence to support the convictions. The two questions presented are confined to (1) the charge of the court on the subject of identification, and (2) the cross-examination of Bakey as to details of prior convictions.

On the evidence presented by the Commonwealth against both defendants, the verdicts of the jury were entirely justified. The three bandits, wearing silk scarfs or bandanas, suddenly faced the employes in the second-floor offices of Abbotts Dairies, Inc., at 3416 Lancaster Avenue, and with drawn revolvers ordered the three employes to put up their hands. The three employes, Randolph Richman, John F. O'Brien, and William Molyneux, were then forced to lie on the floor. The robbers proceeded to take bags of money from the safe and place them in a container. While on the floor near the cashier's cage, Richman was able to see two

of the robbers when they were without masks. He positively identified Bakey by appearance and by voice. Bakey called out "Merry Christmas" as the robbers were leaving. Richman also identified Farley as the short stocky robber who watched the three victims while his confederates were gathering up the money. The offices and the cashier's cage where the drivers of the dairy company turned in their receipts were well lighted by modern fluorescent fixtures which enabled the witnesses to observe the robbers closely. One of the employes, O'Brien, identified Bakey as the tall robber who announced the "stick-up" and who ordered O'Brien "to get my hands up and go across the room and get down on the floor."

Commonwealth's witness, George Lewis, testified that he observed two men acting suspiciously on Meeting House Lane, near 54th Street, Philadelphia, about 8:30 on the evening of the robbery. Lewis saw the two men remove some papers from a parked car and burn them in an adjoining lot; he also heard a sound like money being dumped on the floor of the car. Lewis reported what he heard and saw to the police who went to the scene and discovered the partially burned checks and a driver's return sheet bearing the name of Abbotts Dairies, Inc. Lewis, who had been within a few feet of the two men, later identified Bakey as the taller of the two who had been engaged in burning the papers. The scene of the burning was only a few blocks from Farley's apartment. The witness Richman selected Bakey's photograph from ten submitted to him by the police. He volunteered the remark that Bakey looked younger in the photograph than at the time of the robbery. The photograph had been taken some years before the date of this robbery. Later Richman also identified Bakey and Farley at a police line-up. Police detectives had trailed Bakey and arrested him on the

evening of December 31, 1949, as he was leaving an automobile near 52d and Market Streets in West Philadelphia. At the time of his arrest Bakey attempted to mislead the detectives by telling them the keys he had in his possession were for the apartment of a friend at 510 North 52d Street where he took a woman on occasion. As a matter of fact, the keys were to Farley's apartment next door at 508 North 52d Street. Upon entering Farley's apartment by using Bakey's keys, the detectives discovered Farley on a couch. In the closet of Farley's apartment, behind and under painter's overalls, the detectives found approximately $6,000 in cash, which was identified as part of the money taken from Abbotts Dairies, Inc., three fully loaded revolvers, and a polka dot handkerchief or bandana of the type worn by the robbers on the night of the crime. One of the guns in the closet carried the recent finger print of Bakey.

The victim Molyneux, who was apprehensive that he might be kicked in the face by one of the robbers, while lying on the floor during the robbery, noticed especially the shoes worn by one of them. These shoes were covered with spots of a peculiar shade of blue-grey paint. It appeared that Farley was working at the time as a painter on a housing project, and that he was using this shade of paint. On December 29, 1949, police detectives, while looking for Bakey, saw Farley enter a saloon at 54th Street and Wyalusing Avenue, wearing shoes spotted with blue-gray paint. These shoes admittedly belonged to Farley; they were found in his apartment and were offered in evidence at the trial. Bakey, though divorced from Farley's sister, had remained friendly with Farley. Both defendants denied any participation in the robbery, and the defense of both was an alibi; this was supported by witnesses. Bakey's married sister and brother-in-law, with whom

Bakey roomed in Upper Darby, Delaware County, testified that Bakey was resting on the couch at their home in Upper Darby at the time the robbery took place in West Philadelphia. Farley asserted that he was in a saloon near his apartment, and that he spent part of the time buying a Christmas tree for a neighbor at the time of the robbery. Defense counsel admitted that the money found in the closet of Farley's apartment had been taken from Abbotts Dairies, Inc. Defendants offered no explanation of the strong circumstantial evidence against them—the presence of the cash, the revolvers, and the handkerchief in Farley's closet, and the burnt checks discovered in the alley nearby.

The complaint of Farley on his appeals is that the charge of the court was not adequate on the subject of identity, and that the trial judge erred in refusing his points for charge which were to the effect that testimony as to identity should be received with caution and carefully considered by the jury especially where the testimony as to identification was merely an expression of opinion. The Commonwealth witness Richman definitely identified Farley and Bakey as the robbers; in addition there was the circumstantial evidence pointing conclusively to Farley's identity as a participant in the crime. Cf. *Com. v. Lindner,* 133 Pa. Superior Ct. 196, 199, 2 A. 2d 518.

The evidence as to identification of both defendants was ample to convince the jury beyond a reasonable doubt that they were two of the three perpetrators of the crime. Bakey in his appeals raises no question as to his identification or as to the charge of the court. The present case is not comparable to *Com. v. Ronello,* 242 Pa. 381, 89 A. 553, or *Com. v. Sharpe,* 138 Pa. Superior Ct. 156, 159, 10 A. 2d 120, and similar cases, where the testimony as to identification amounted to

no more than an expression of opinion. "Where a witness states positively and without qualification that in his opinion the defendant is the man, that is sufficient proof": *Com. v. Sharpe,* supra, 138 Pa. Superior Ct. 156, 159, 10 A. 2d 120. The trial judge in his charge adequately reviewed the evidence, including that relating to the direct identification of both defendants and the circumstantial evidence as it related to their identity. He made it plain to the jury that the Commonwealth must establish the identity of the defendants beyond a reasonable doubt. The charge of the court is a model for concise and clear statement of controlling legal principles, and it reviewed the main points arising from the evidence on both sides. The charge was adequate on the subject of identification, and there was no error committed in the refusal of the points submitted.

On behalf of Bakey it is argued that the trial judge erred in permitting the district attorney to question him on cross-examination as to the details of a prior conviction for robbery admitted by him on direct examination and as to the details of two other convictions for robbery to which he had made no reference.

On cross-examination of Commonwealth's witness Richman, counsel for Bakey asked Richman whether he knew when he identified Bakey in the police line-up and from photographs that Bakey "was on parole and did some time for robbery." Later Bakey took the stand in his own behalf, and in answer to questions by his own counsel immediately brought out the fact that he had been in the Eastern State Penitentiary from 1935 to 1945, serving a sentence of ten to twenty years for armed robbery; and that he had been released on parole in October, 1945. Bakey was then asked by his counsel as to the rules and regulations relating to his parole. The tactics used in the defense of Bakey were unusual. He presented a special defense when he at-

tempted to convince the jury that he would not commit another robbery while on parole from sentence on a prior robbery, as such action would subject him to service of the unexpired balance of his maximum term; and that suspicion was directed toward him because of his bad record and reputation. The court below in its opinion said: "The theory of the defense was a bold one, pursued from the very inception perhaps by reason of desperation."

On direct examination Bakey testified that he read about the robbery in the Philadelphia Inquirer the next morning, Wednesday, December 21, 1949. Bakey is supposed to have said to his brother-in-law that he was glad he was at home during the robbery because he would be picked up by the police as a suspect. In his extensive cross-examination of Police Detective Gionetti, counsel for Bakey attempted to obtain an admission that the police took the photograph of Bakey to show to Commonwealth's witness Richman as a suspect solely because of Bakey's previous record as a robber. On cross-examination by the district attorney, Bakey said he was not apprehensive that he might be accused of any small robberies he read about in the papers, the inference being that he would be accused of large robberies only by reason of his past record. Throughout the trial Bakey clearly set up the affirmative defense that he was mistakenly accused of the Abbotts Dairies robbery because of his previous record and reputation for taking part in large robberies, and that he would not be a subject of suspicion where the robberies did not involve large amounts. The district attorney then questioned Bakey about the details not only of the 1935 armed robbery of a bank in Chester, Pennsylvania, where $60,000 was taken, for which crime he was on parole, but also about two previous convictions for robbery—one relating to the Philadelphia

Electric Company, where the amount taken was $48,000, and the other relating to Wills-Jones-Supplee Milk Company. When questioned as to the size of the latter robbery, Bakey stated: "I would say a medium robbery." He then disclosed that the amount involved was "about $10,000." Defense counsel objected to this line of cross-examination. Bakey's contention now is that the cross-examination as to the details, amounts, places, and accomplices of these three prior robberies was a violation of the fundamental rule of criminal law that a defendant cannot be convicted of one crime by showing that he had committed other crimes of a similar nature.

Bakey was not entitled to the protection afforded by the Act of March 15, 1911, P. L. 20, §1, 19 PS §711. When this defendant on direct examination testified that he had been convicted of robbing the Chester bank, he voluntarily stepped outside the Act of 1911, and it was proper to show on cross-examination his conviction of other crimes. *Com. v. Quaranta,* 295 Pa. 264, 272, 145 A. 89; *Com. v. Yeager,* 329 Pa. 81, 90, 196 A. 827. See Pennsylvania cases under the Act of 1911, collected and reviewed in 1 Wigmore, Evidence §194b, note 3, p. 658 (3d Ed.). We recognize the established rule announced in *Com. v. Williams,* 307 Pa. 134, 147, 148, 160 A. 602, that the Commonwealth may not prove distinct crimes unconnected with that laid in the indictment as substantive proof of the crime charged; but this rule was not violated in the present case. The Commonwealth had in its case in chief submitted ample proof that the defendants committed the crimes charged, and it was not attempting to use the prior convictions of Bakey as substantive proof of the crimes for which he was being tried.

But this defendant, Bakey, could not introduce his criminal record and reputation as one specializing in large robberies as a ground of defense, and at the same time prevent the Commonwealth from disclosing the

relevant details of that record. Cross-examination of the defendant to meet this type of defense was proper. When he says that he was suspected only because he was known as a man involved in large robberies, defendant opened the door to inquiry as to the nature of his former robberies. He cannot rely on his bad record in part and then limit inquiry into his criminal record to suit his own purposes and to present a false picture. We think this defendant opened the inquiry generally and for all purposes. Further, Bakey, by taking the stand and testifying in his own behalf and admitting a previous conviction, put his character and credibility in issue. Having asserted that he had not been concerned about small robberies, the cross-examination as to the amount of money taken on former occasions had a bearing on his defense as well as upon his credibility as a witness.

Great latitude is afforded the Commonwealth on its cross-examination of a defendant in a criminal case who takes the stand in his own behalf. *Com. v. Halleron,* 163 Pa. Superior Ct. 583, 589, 63 A. 2d 140. The extent of cross-examination of a defendant in a criminal case is a matter largely within the sound discretion of the trial court. *Com. v. Quaranta,* supra, 295 Pa. 264, 271, 145 A. 89. Under all the circumstances, and considering the nature of his defense, Bakey is in no position to complain of the limited cross-examination permitted by the trial judge concerning the nature of the three previous robberies of which he had been convicted. Cf. *Com. v. Calderbank,* 161 Pa. Superior Ct. 492, 499, 55 A. 2d 422.

We think it is clear, for the reasons stated, that the cross-examination of Bakey as to the details of his prior convictions was not error as to him. Nor was this cross-examination of Bakey error as to Farley who was definitely shown by other evidence to have been an accomplice of Bakey. See *United States v. Hannon,* 105

F. 2d 390, 391. The charge of the court was complete and correct and the issues were clearly presented to the jury; there has been no complaint as to the sufficiency of the evidence to sustain the verdicts of the jury beyond a reasonable doubt; and there was no trial error that could justify a reversal of the convictions.

The judgments and the sentences as to each defendant are affirmed.