Commonwealth *v.* Kumitis, Appellant.

Submitted March 28, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Albert Kumitis,* appellant, submitted a brief in propria persona.

*Warren S. Sharpless,* District Attorney, and *Hervey B. Smith,* Assistant District Attorney, for appellee, submitted a brief.

OPINION BY DITHRICH, J., July 20, 1950:

Defendant, appearing *in propria persona* in this appeal from a conviction and sentence for aggravated robbery, has filed 18 assignments of error and a 70-page statement of the question involved, which boils down to "Whether the conduct of the trial judge met with the

fundamental standards of fairness and decency imposed by the Bill of Rights as secured by the Constitution of Pennsylvania, and whether the manner in which it was conducted, ran afoul of the basic standards of fairness which is involved in the constitutional concept of due process of law."

After considering all of the assignments very carefully, we have reached the conclusion that they are, with one possible exception, without merit.

Defendant was indicted and convicted of having committed, with accomplices unnamed and unapprehended, an armed robbery of the B.P.O. Elks Lodge Club in Berwick, Pennsylvania, and of having stolen and carried away approximately $1500 in cash, a quantity of liquor, and a number of slot machines.

Roy Croop, night steward at the Club, stated that about four o'clock in the morning of September 23, 1944, someone rang the doorbell at the rear entrance of the Club. When he opened the door he was confronted with three masked and armed men, who forced him back into the building, bound his hands and feet with rope, and placed a blindfold over his eyes. He was forced to remain in that position on the floor of the banquet hall adjoining the grill for a period of approximately an hour, during which time he could hear four persons—the three whom he saw were later joined by a fourth, whose voice he recognized as that of the defendant—ransack the building, most of the time being occupied in removing eleven slot machines, which were quite heavy. As soon as he was able to free himself, he reported the robbery to the Berwick police. After an investigation, in which the local police were aided by the State Police, two of the slot machines were recovered from a hotel in Mt. Carbon, Schuylkill County. The proprietor testified that they had been left at his place by the defendant on or about October 10, 1944.

On October 21 the defendant was arrested in front of the residence of Frank Markunas and his wife, Violet Markunas, in Mahanoy City, where the defendant had a room. In his room the officers found a fountain pen, which was identified as having been stolen in the robbery, and in a shed at the rear of the premises one of the missing slot machines was found. On the same day the officers, armed with a search warrant for premises rented by Mrs. Markunas in Ryan Township, where defendant maintained a headquarters and repair shop for the pinball machine business in which he was engaged, found a pair of pliers and a screw driver which had been stolen from the Club, keys which opened the locks of the slot machines, keys to the cash register, and keys to various doors of the Club. In a tool box they found eleven locks to which were later fitted the keys to the eleven slot machines which had been stolen.

Defendant did not take the stand in his own defense, but Sergeant Frick and Private Weichel of the State Police testified that he told Sergeant Frick that he knew the Club was going to be robbed; that he knew who robbed it, but that he was not there when the "job was pulled"; and that the other men brought the stolen property, including the slot machines, to him at the farm in the afternoon of the same day the robbery was committed. The only person who testified for the defendant was Mrs. Markunas, who said that defendant left her home between nine and ten o'clock in the evening of September 22 and returned about three o'clock in the morning of September 23. She further testfied that he entered the kitchen, where she was baking a cake for her husband's birthday; that she made him a cup of coffee; and that he then went upstairs to his room.

The first assignment of error, that the court erred in ruling that defendant had lost his right to appeal, is moot. In an order dated December 27, 1949, ordering that the defendant be brought before the court for sen-

tence, the trial judge inadvertently stated that the time for taking an appeal had expired. He explains that what he meant to say was that the time for "specifying in writing [the] manifest errors in the record" in support of the motion in arrest of judgment had expired. The Commonwealth agrees, however, that an appeal could not be taken until the defendant had been sentenced and that he has since perfected his appeal within the required time.

As to the second assignment, that the court erred in refusing to grant a new trial, we are of opinion that while the record is not entirely free of error, there is none so prejudicial as to entitle defendant to a new trial.

Assignment No. 3 is that "The . . . court erred in refusing to . . . [sustain] the . . . demurrer based on the law of jurisdiction." The indictment was captioned "In the Court of Oyer and Terminer *of the Peace* in and for the County of Columbia," and the verdict was found "In the Court of Quarter Sessions of the County of Columbia." (Emphasis added.) The learned president judge of the court below, in his opinion refusing the motions in arrest of judgment and for a new trial, says:

"It appears that the District Attorney in drawing the indictment used a printed form for the 'Court of Quarter Sessions of the Peace' and with a typewriter had the words 'Quarter Sessions' stricken out and the words 'Oyer & Terminer' inserted above the stricken words. . . .

"The blank form of verdict sent out with the jury . . . was also a printed form for the Court of Quarter Sessions of the Peace, and the jury returned a verdict of guilty upon this form without having the title of the court corrected. Counsel now contend that the verdict is fatally defective for this reason."

Of course there is no such court as "Oyer and Terminer of the Peace," the correct designation being "Oyer and Terminer and General Jail Delivery"; but

section 1 of the Act of May 10, 1927, P. L. 879, 17 PS §392, provides that: "Whenever any indictment, other than an indictment for murder, shall be found in any court of oyer and terminer, or quarter sessions of the peace, of the county where the offense was committed, for any crime not triable under existing law in the court where found, the court may nevertheless proceed with the trial of the accused in the court in which such indictment was found, unless the court shall, upon motion of the accused, certify the indictment to the proper court for trial. No motion made after verdict, or writ of error or appeal, based on a failure to indict or try a defendant . . . in the proper court, as provided by existing law, shall be granted or sustained, unless it be affirmatively shown that the accused was in fact prejudiced in his defense upon the merits and a failure of justice has resulted." The error was at most a formal defect which could be corrected even after appeal taken, and defendant was in no way prejudiced thereby. *Commonwealth v. Eberhardt*, 164 Pa. Superior Ct. 591, 67 A. 2d 613.

Assignment No. 4 is that the court erred in not granting defendant's motion for binding instructions on the ground that he was not sufficiently identified as one of the four men who committed the robbery. If his conviction depended upon the testimony of Croop alone, who said that although he was not one of the three men who first entered the building he later recognized his voice because of its peculiar high pitch, although he had not heard it for 16 or 18 years, we would be constrained to sustain the assignment. *Commonwealth v. Derembeis*, 120 Pa. Superior Ct. 158, 182 A. 85. But Croop's testimony was not the only testimony connecting defendant with the robbery. In addition thereto there was the testimony of two police officers, who saw him in the vicinity of the Club earlier in the evening, his possession of part of the stolen goods, and his ad-

mission that he knew the Club was going to be robbed and who "pulled the job."

There was no variance between the allegata and the probata, as claimed in assignment No. 5. The Commonwealth was, of course, required to and did prove the theft of the specific articles mentioned in the indictment, but it was not precluded from proving that other articles were stolen at the same time and were subsequently found in the possession of defendant. *Commonwealth v. Burke,* 74 Pa. Superior Ct. 320.

Assignments Nos. 6, 7, 8, and 9, to the effect that the charge of the court was misleading, prejudicial, and inadequate, are entirely without merit. At the conclusion of the charge counsel for defendant asked for additional instructions in regard to certain matters and the request was fully complied with. Counsel then said "We have no further requests," and took only a general exception to the charge. There was no fundamental error in the charge and, on the whole, it was clear, concise, and in no sense calculated to mislead or coerce the jury. The transcript of the notes of testimony, to which no objections were filed, shows that defendant and his counsel were present both times that the jury was recalled to the courtroom and that nothing was "deleted . . . out of the record," as charged in the tenth assignment.

Before sentence, defendant filed a petition for habeas corpus in the Supreme Court. On December 6, 1949, in discharging the rule to show cause why the writ should not be granted, the Court referred to the fact that defendant had been ordered by the trial judge to appear in court December 8, 1949, for sentence, and said: "Relator is not being held in the *Eastern State Penitentiary* for his conviction of robbery in Columbia County. Sentence will not be imposed on that conviction until December 8, 1949. *He is confined as a technical parole violator."* Therefore the defendant is mistaken when he says that

the Supreme Court set December 8, 1949, as the date for sentence and that the deferring of sentence until January 3, 1950, "constituted a flagrant violation of the Order of the Supreme Court . . .", the subject of assignment No. 11.

We will pass assignment No. 12 for the moment.

While there was admittedly an unreasonable delay in sentencing defendant, he was tried within two terms after commitment, as required by section 54 of the Act of March 31, 1860, P. L. 427, 19 PS §781; and even if he had not been so tried (assignment No. 13), it would be too late to raise the question after trial and conviction. *Commonwealth v. Halderman,* 299 Pa. 198, 149 A. 476. His contention that he was illegally transferred from the Columbia County Jail to the Eastern State Penitentiary after his trial and conviction for the crime committed in that county (assignments Nos. 14 and 15) is without foundation, either in fact or in law. Following his conviction he was returned to the Eastern State Penitentiary as a parole violator on a detainer filed with the Sheriff of Columbia County by the Pennsylvania Parole Board. In disposing of his petition for a writ of habeas corpus the Supreme Court said:

"On October 25, 1944, while on parole, relator was charged in Columbia County before a justice of the peace with the crime of robbery. Relator was represented by counsel. He was committed to the Columbia County jail and indicted upon a true bill. On December 5, 1944, relator was tried before a jury. He was represented by counsel. He was found guilty as charged. . . .

"On April 20, 1945, relator was returned to the Eastern State Penitentiary as a Technical Parole Violator, with no time lost."

There is no question but that there was an unreasonable delay in the transcription of the testimony—it was not filed until July 8, 1946—and in disposing of the

motions in arrest of judgment and for a new trial (assignments Nos. 16 and 17). They were not argued until June 27, 1949, three years and five days after the testimony had been lodged in the office of the Clerk of Courts. Much of the delay was due to repeated requests of counsel for defendant for continuances. The opinion of the court was filed September 9, 1949. But we fail to see how defendant was in anywise prejudiced by the delay since he was serving time as a technical parole violator and, as the Supreme Court said, "with no time lost."

There is no basis for defendant's final assignment that the court acted as prosecutor at the habeas corpus proceedings in the lower court, in the absence of the Berwick police officer who made the information, or at any other time.

We will now take up and discuss the twelfth assignment of error. It is that the court, in the absence of defendant and his counsel, on January 9, 1950, modified the sentence imposed January 3, 1950, by increasing the term of imprisonment. This is a serious objection and a great injustice might have been done defendant, not only in modifying or correcting the sentence in his absence, but in not imposing sentence until more than five years after the defendant had been adjudged guilty by the jury. We note in passing that in imposing sentence and in modifying or correcting the sentence, the court said in both instances: "We adjudge the defendant guilty." It was not the function of the court to adjudge the defendant guilty; he had already been found guilty after trial by jury. The verdict was returned December 7, 1944; sentence was not imposed until January 3, 1950. But in the circumstances we do not feel called upon to reverse the judgment of sentence, or to set it aside. At the time of the commission of this crime in Columbia County, defendant was on parole from the Eastern State Penitentiary, where he had been sentenced

by the Court of Oyer and Terminer of Luzerne County on April 18, 1932, for a period of from 25 to 50 years. On May 22, 1942, the sentence was commuted to 10 to 30 years, and on the same day he was paroled from the penitentiary. Section 10 of the Parole Act of June 19, 1911, P. L. 1055, as amended, 61 PS §305, provides, in part, that: "If any convict released on parole, . . . shall, during the period of his . . . parole, . . . commit any crime punishable by imprisonment for which he . . . is at any time thereafter convicted in any court of record and sentenced . . . to the penitentiary from which said convict was released on parole, . . . the service of the remainder of the said term originally imposed shall precede the commencement of the term imposed for said crime [committed while on parole]."

After imposing sentence on January 3, 1950, the court, having been advised by letter from the Pennsylvania Board of Parole, which is attached to the order of court modifying or correcting the sentence, that the sentence was not in accordance with law, changed it to take effect at the expiration of the term to be served for violation of the parole, instead of October 23, 1944, the date of his commitment to the Columbia County Jail. Technically this modified sentence does have the effect of increasing the term of imprisonment by more than five years since the prisoner is not given any credit on his present sentence for the time he served either in jail or in the penitentiary before sentence. We assume that he will be given credit on the maximum sentence, not served when he was released on parole, for the time served in the penitentiary since his conviction of the present crime. That, however, is a matter to be determined by the Board of Parole. The modified sentence was in strict accord with the mandatory provision of the Parole Act; and while the sentence should not have been changed in the absence of defendant, if we were to set it aside and remit the record so that he could be re-

sentenced, the court would be without authority to make the sentence effective as of any other date. Cf. *Commonwealth ex rel. Rossey v. Ashe,* 137 Pa. Superior Ct. 525, 10 A. 2d 95; *Commonwealth ex rel. Lerner v. Smith,* 151 Pa. Superior Ct. 265, 30 A. 2d 347. It is not the period of the sentence imposed that defendant complains of, but the change in the time when it was to begin and take effect.

All of the assignments of error are overruled and the judgment is affirmed.