Commonwealth *v.* Coroniti, Appellant.[1]

Submitted September 25, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

---

[1] This case is incorrectly captioned as: "Commonwealth of Pennsylvania ex rel. Licando Salvatore Coroniti v. Cornelius J. Burke, Warden, Eastern State Penitentiary".

*Licando Salvatore Coroniti,* petitioner, in propria persona.

*H. F. Bonno,* District Attorney, for respondent.

OPINION BY ROSS, J., January 17, 1952:

Licando Salvatore Coroniti was convicted on December 7, 1942 on two indictments charging arson and burning to defraud an insurer. He was sentenced to serve a term of not less than 10 nor more than 20 years in the Eastern State Penitentiary on the arson charge; sentence was suspended on the other indictment. This Court upheld the conviction and affirmed the judgment of sentence (*Com. v. Coroniti,* 155 Pa. Superior Ct. 131, 38 A. 2d 397), and the defendant was ordered to appear in the court below to submit to incarceration in accordance with the sentence imposed.

Coroniti began serving his sentence, and there the matter rested until April 5, 1950 when his petition praying for a new trial and asking that judgment and sentence be vacated was presented to the Court of Oyer and Terminer of Northumberland County. It was alleged in the said petition that the Commonwealth's witness, Anthony Aurigemma, without whose testimony

the defendant could not have been convicted, had perjured himself on a material matter at the trial. After argument, and a hearing at which Aurigemma appeared and testified, Coroniti being represented by court-appointed counsel, the Court refused the motion for a new trial and dismissed the petition, and the defendant took this appeal.

Coroniti was tried twice under the indictments in this case. On the first trial, in September 1942, the jury disagreed and was discharged. The second trial, in December of that year, resulted in a conviction. At each trial the Commonwealth's witness Aurigemma testified as to certain conversations with Coroniti in the Northumberland County prison. In these conversations Coroniti admitted his participation in the crimes for which he was thereafter tried and convicted. At both trials, the witness testified that he had been in the employ of the National Board of Fire Underwriters as an arson investigator for a period of twelve years and that previous to that employment he had been employed by the United States Department of Justice and also by the Post Office Department for a period of about eight years. On cross-examination Aurigemma was questioned concerning the various places he had lived while in the employ of the Federal Government. He testified that he was "in" Chicago for "quite awhile", that "I was in the post office in Chicago".

The present position of the defendant is predicated solely upon the alleged falsity of the two statements with respect to Aurigemma's employment with the Federal government. The defendant alleges in his petition that the testimony of Aurigemma concerning his employment with the United States Government is false and to substantiate the alleged perjury attached to his petition two letters addressed to the chaplain of the Eastern State Penitentiary at Graterford, Pennsylvania—one, June 1, 1949, signed by J. Edgar

Hoover, Director of the Federal Bureau of Investigation to the effect that the records of the said bureau failed to reflect that Anthony Aurigemma had been employed by said bureau at any time during the period from 1922 to 1942, and another dated May 17, 1949, signed by the Acting Postmaster of the United States Post Office of Chicago, stating that "there is no record of a person named Anthony Aurigemma on our roster".

The defendant contends that the testimony of Aurigemma carried weight to which it was not entitled because the witness stated that he was "an . . . ex-Federal Bureau of Investigation agent" and an "investigator" for the "Chicago Postal Authorities". The defendant's brief, prepared by himself, was admittedly prepared without reference to the notes of testimony and is based upon a misconception of the testimony of Aurigemma. The latter did not at any time in his testimony state that he had been an F. B. I. agent nor did he state that he had been an investigator for the Chicago postal authorities. In view of his imperfect recollection of the testimony alleged to be false, it is not surprising to find that the proof offered by the defendant to show perjury by Aurigemma falls far short of that objective.

At the hearing in the court below, counsel for the petitioner offered the two letters above mentioned in evidence and then rested. The letter from Mr. Hoover is, of course, of little probative value on the issue of perjury. The Federal Bureau of Investigation is merely one of the many offices, divisions, bureaus and boards which go to make up the Department of Justice. See United States Government Organization Manual 1950-51, compiled by the Federal Register Division, National Archives and Record Service. It may be granted that the letter is some evidence that Aurigemma had never been an F. B. I. agent, but it is of little value on the question of whether he was ever em-

ployed by the Department of Justice. The second letter, signed by John Haderlein, Acting Postmaster, United States Post Office, Chicago, Illinois, simply stated that there was no record "of a person named Anthony Aurigemma on our roster".

At the hearing on the petition of Coroniti, Aurigemma was called as a witness. He testified that prior to his employment with the National Board of Fire Underwriters, he was employed by the United States Department of Justice, working under one A. Belaski, who was an Assistant Attorney General and worked on such assignments as would be referred to him by Mr. Belaski, which work was in the nature of an undercover investigator. While thus employed, he would be assigned to other departments of the government, including the Post Office Department, for the purpose of obtaining information or evidence which might be used by the Department of Justice in prosecuting suspects. Subsequent to the hearing in the court below and prior to argument before this Court, the defendant received a third letter. This letter, which is included in the defendant's brief, is signed by S. A. Andretta, Administrative Assistant Attorney General. It acknowledges the employment of an "Alexander Bruce Bielaski" in "this Department" from July 1905 until February 10, 1919, and from May 13, 1925 to March 15, 1926; but states that there is no record of the employment of Aurigemma. The letter tacitly admits, however, that the records at the disposal of the writer are not conclusive on the question of Aurigemma's employment because it is suggested that the addressee "contact the National Archives, Washington, D. C. for a further check"; therefore it is of little or no probative value on the question of Aurigemma's employment.

If perjury by an essential witness is admitted or is shown by incontrovertible evidence, a new trial

should be granted (*Kvaternik v. Yochim,* 360 Pa. 387, 61 A. 2d 815), but if there is doubt as to the falsity of the testimony a new trial is properly refused. Here there is no admission of perjury and no incontrovertible evidence of it. Furthermore, our examination of the testimony given by Aurigemma at the *first* trial, at the *second* trial and at the *hearing* on the present petition, discloses no discrepancies whatsoever in his testimony relative to his employment. The defendant had the burden of proving perjury, and we agree with the learned court below that he did not meet that burden.

In this view of the case, it is not necessary for us to discuss whether the defendant should be granted a new trial under the principle of after-discovered evidence (the alleged perjury of Aurigemma) other than to state that it does not meet the tests as set forth by this Court in *Com. v. Hanes,* 162 Pa. Superior Ct. 206, 57 A. 2d 165, in which we stated at page 209; "A new trial in a criminal case will be awarded on the ground of after-discovered evidence where the evidence in question (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted: Commonwealth v. Moskovitz, 142 Pa. Superior Ct. 325, 326, 16 A. 2d 317."

The order refusing a new trial is affirmed.