## Commonwealth v. Kumitis (No. 2)

446

*Donald W. Van Artsdalen*, District Attorney, for Commonwealth.

*William Thatcher*, for defendant.

BIESTER, P. J., November 7, 1958.—Defendant in this case, Albert Anthony Kumitis, was tried on the two bills of indictment, heretofore set forth in the caption, and convicted of the first, second and fourth counts thereof, that is to say burglary, larceny and conspiracy. The case was attached on February 25,

1957, and the verdict rendered by the jury on February 27, 1957. On March 1, 1957, the court-appointed attorney for defendant filed a motion for a new trial assigning the standard reasons therefor and reserving the right to file additional and supplemental reasons after the notes of testimony had been transcribed. Apparently finding no substantial error, counsel has pursued the matter no further. Defendant has himself filed a motion for new trial and a motion in arrest of judgment. Subsequent petitions by defendant, argument thereon, and various requests for delay by defendant, have postponed the disposition of his motions. Defendant has now presented his argument before the court en banc and has submitted a lengthy handwritten brief in support thereof.

### Motion in Arrest of Judgment

The reasons urged in support of the motion in arrest of judgment are as follows:

1. The court erred in proceeding with the trial without a plea entered.

2. The court lacked jurisdiction to try on the count of conspiracy.

3. That there must be two convicted conspirators.

4. The court erred in failing to quash the indictment.

5. The court erred in failing to sustain defendant's demurrer.

I. Entry of Plea.

Defendant contends that no plea was entered to either bill of indictment, although the bills of indictment contain the words "the defendant, being arraigned in open Court, pleads not guilty". In addition the court sheet, being the paper on which the original record is kept by the clerk during the course of the trial, sets forth that defendant entered pleas of not guilty. The docket entries also state that on February

25, 1957, "the defendant, being arraigned in open Court, pleads not guilty". The record is the same as to both indictments.

It is the practice in this county, and one of which we approve, to have defendants sign the bills of indictment, but in the present case the district attorney evidently neglected to have defendant do so, as defendant's name is not signed to the plea. In any event, not only do the court records set forth that defendant entered a plea of not guilty on each indictment, but defendant was present during the trial and was represented by counsel and the trial proceeded in all respects consistent with the entry of a not guilty plea. Although we do not agree there is any defect of merit in the record, even if there were such a defect, such an omission, under the circumstances, would not be a ground for a motion in arrest of judgment. See Commonwealth v. Saler, 84 Pa. Superior Ct. 281, 287; Commonwealth v. Kinner, 137 Pa. Superior Ct. 256, 260.

II. Jurisdiction to Try on the Count of Conspiracy.

The argument in regard to this assigned reason is, as we understand it, the joinder of the conspiracy charge, a misdemeanor, with the felonies of burglary, larceny and receiving stolen goods. The indictment itself is captioned In the Court of Oyer and Terminer and General Jail Delivery in and for the County of Bucks, three of the counts, that is to say, larceny, burglary and receiving stolen goods, being set forth on the first sheet and conspiracy on the second sheet of the indictment. Defendant contends that conspiracy, being triable only in the court of quarter sessions of the peace, could not be tried before the court of oyer and terminer and general jail delivery. There is no complaint by defendant regarding the joinder of the burglary and larceny counts.

The argument is similar to that raised by the same defendant in the case of Commonwealth v. Kumitis, 167 Pa. Superior Ct. 184. There the court refers to section 1 of the Act of May 10, 1927, P. L. 879, sec. 1, 17 PS §392, which provides as follows:

"Whenever any indictment, other than an indictment for murder, shall be found in any court of oyer and terminer, or quarter sessions of the peace, of the county where the offense was committed, for any crime not triable under existing law in the court where found, the court may nevertheless proceed with the trial of the accused in the court in which such indictment was found, unless the court shall, upon motion of the accused, certify the indictment to the proper court for trial. No motion made after verdict, or writ of error or appeal, based on a failure to indict or try a defendant or defendants in the proper court, as provided by existing law, shall be granted or sustained, unless it be affirmatively shown that the accused was in fact prejudiced in his defense upon the merits and a failure of justice has resulted."

As was said in that case and in Commonwealth v. Eberhardt, 164 Pa. Superior Ct. 591, the error, if there be one, is at most a formal defect which could be corrected even after appeal taken. We might add that defendant completely failed to show that he was in fact prejudiced in his defense by reason of any failure of certification and that no request for certification has ever been made.

The secondary phase of defendant's argument as to this assigned reason, that is to say, the contention that it is always improper to join the count of conspiracy with other counts of a bill of indictment, is unsound. See Commonwealth v. Petrillo, 338 Pa. 65, 90.

III. Requirement There Be at Least Two Conspirators.

Of course we agree with defendant's contention that in order to constitute the offense of conspiracy there must be two conspirators and this situation clearly existed in the case before us. The counts of the indictments in question stated that defendant "did unlawfully and feloniously conspire with other persons, to wit, David J. Howard, alias Howard Davelman, Charles P. Ghaul, Stephen Vincent Burns and Dominick Lattanzi, to commit the offense of burglary in the building of Nathan Grodsky" as to bill no. 84; the same language is used in bill no. 85, except that the building of Pete Grodsky is averred as the building in which the burglary took place.

Three of his coconspirators testified at the trial, two for the Commonwealth and one on behalf of defendant, each of whom testified that he had entered a plea of guilty to the respective charges. Apparently defendant believes he could not be tried alone and separate from his coconspirators, but this is clearly not the law: Commonwealth v. Salerno, 179 Pa. Superior Ct. 13.

IV. The Motion to Quash the Bill of Indictment.

The basis for the motion to quash was stated by defendant's counsel as follows: "I would like to, on behalf of defendant, move that the Indictments Nos. 84 and 85 of November Sessions of 1956 be quashed on the ground that the evidence submitted to the Grand Jury was incompetent, that it being evidence of witnesses who had no direct knowledge of the facts involved." Each of the indictments is endorsed with a number of witnesses, many of whom were added during the course of the trial. At the time the motion to quash was made, both indictments listed the names of Detective Vincent Faragelli as prosecutor. One of the indictments named as a witness Pete Grodsky and the other as a witness Nathan Grodsky.

We do not believe the court erred in failing to quash the indictment on this ground. A similar contention

was made in the case of Commonwealth v. Halleron, 163 Pa. Superior Ct. 583, 586. There the court says, page 586:

"Appellant contends that the indictment should have been quashed because the only testimony upon which the grand jury returned a true bill was hearsay and therefore incompetent testimony. While an indictment may be quashed where no witnesses appear before the grand jury (Com. v. Brownmiller, 137 Pa. Superior Ct. 261, 268, 9 A. 2d 155), or where the only witness called was incompetent, it will not be quashed where some competent witnesses were examined by the grand jury (Com. v. Morris, 91 Pa. Superior Ct. 571, 574, 575; Com. v. Vancel, 99 Pa. Superior Ct. 40, 41, 42; Com. v. Spallone (No. 2), 154 Pa. Superior Ct. 290, 293, 35 A. 2d 731)."

There is no question as to the competency of the witnesses whose names were endorsed on the bills of indictment, and it cannot be presumed that no testimony was produced before the grand jury to justify a true bill. If the court followed the practice of permitting a hearing before the court on bare allegations that the testimony before the grand jury was insufficient to warrant the finding of a true bill, it is not unlikely that the courts would be deluged with such motions.

Under this heading defendant complains that he did not attend the preliminary hearing, he then being incarcerated in jail in Philadelphia County awaiting trial. This is precisely the same question that was disposed of adversely to defendant in Commonwealth v. O'Brien, 181 Pa. Superior Ct. 382, except that in that case the district attorney had not asked leave of the court to present the indictment to the grand jury. In the present case such leave was obtained.

V. Demurrer.

Under this assignment defendant argues that there was a variance between the bill of indictment and the testimony regarding the contents of the two safes which were removed from the Grodsky homes in that the Commonwealth did not establish that the safes contained all of the items listed in the bill of indictment.

This, together with the contention that there was no evidence that defendant had entered the Grodsky residences, from which the safes were taken, constitutes the basis upon which counsel for defendant moved for a demurrer.

We think it clear that the Commonwealth was not required to establish larceny of precisely the same property as alleged in the bills of indictment. Proof of the felonious taking of money in an amount either greater or less than averred in the indictment will sustain a conviction: Commonwealth v. Dingman, 26 Pa. Superior Ct. 615; Commonwealth v. Spear, 73 Pa. Superior Ct. 205; Commonwealth v. Haimbach, 151 Pa. Superior Ct. 581, 586. The taking of the safes, whatever the contents might have been, established the crime, and any variance as to the contents of the safes would appear to have no legal effect.

Apparently defendant is firmly convinced that he cannot be convicted on the charges of burglary and larceny unless the Commonwealth's evidence disclosed that he entered the building where the offenses were perpetrated. Unfortunately for him, the law is clearly to the contrary.

After first charging on the nature of the crime of conspiracy we told the jury that: "When a conspiracy or agreement is entered into between several persons to do an unlawful act, all persons who are engaged therein are equally responsible for all that is done in pursuance thereof, and continue to be responsible until

the purpose for which the conspiracy is entered into is fully accomplished.

"Applying what we have most recently said to the facts in this case, it would not be essential that the Commonwealth establish that this defendant himself entered into the buildings and removed the safes. If he was one of the conspirators in an agreement entered into between the various defendants or any of them this defendant being one of at least two who entered into an agreement to perform these acts then he would be equally guilty with his coconspirators for anything they did while the conspiracy was being carried out."

We believe that this charge was in conformity with the law and that the evidence produced amply justified the jury in finding that defendant was a coconspirator and that the jury was equally justified in finding him guilty of the offenses of burglary and larceny. See Commonwealth v. Lowry, 374 Pa. 594, 600, and cases there cited.

As to the allegation now advanced by defendant that the evidence was insufficient to justify the cases being submitted to the jury, such a contention is clearly without merit, but in order to pass upon the argument it is essential that we set forth in this opinion the nature of the evidence submitted by the Commonwealth justifying the conviction.

The principal witness against defendant was Stephen Burns, an admitted accomplice and coconspirator. He testified that he received a call from defendant on the day before the burglary asking Burns to meet him at defendant's tailor shop in Philadelphia. At that time they talked about the safes. He said that on the date of June 16, 1956, at about 6 p.m., he met defendant and Howard Davelman, or, as he is sometimes known, David J. Howard, at a diner on Route 130 in the State of New Jersey. They proceeded from this point to the Borough of Bristol, Bucks County, for the purpose of

meeting Ghaul and Lattanzi, the two other principals. This meeting took place at about 6:30 or 6:45 at a diner in Bristol. From there they proceeded in a truck, driven by defendant, to a lake near the Grodsky premises and while there Lattanzi "came over and gave us the okay" to go to the Grodsky home.

When they arrived at the premises, the smaller safe had already been removed. Four of the accomplices, including Kumitis, loaded the safe on the truck and drove to a shack not far from the Grodskys. From there the safe was taken to a lake in the immediate vicinity. Burns remained with Ghaul while the safe was removed. In approximately one-half hour defendant returned, the safe having been removed from the truck. The parties then returned to the Grodsky home and the larger safe, with the help of all of the perpetrators, was placed on the truck. Burns then drove the truck, accompanied by defendant, to a diner in New Jersey where Burns picked up his car and preceded Kumitis, who was driving the truck containing the safe, to a farm house in Woodbury, N. J. There the truck was unloaded and an attempt made to open the safe with the use of a sledgehammer, wielded by defendant. While working on the safe someone flashed a light into the building and Kumitis and Burns ran from it. Sometime after the commission of the crime, he said he talked to Kumitis who told him that he had gone "upstate and got an alibi".

Two persons, Andrew Snyder and Robert R. Snyder, his brother, the former of whom said he shined a 90,000-candle power spot light into the building, identified Kumitis as the man whom they had seen in the building and who fled therefrom.

Lattanzi said that he first met defendant at the diner in Bristol, that from the diner Burns and defendant left in the truck to drive to the lake heretofore referred to, that he, Lattanzi, then took the others

to the Grodsky house and after a brief interval, met defendant and Burns at the lake and told them they might come up to the house to unload the safe.

We think from this evidence it is clear that if the jury accepted the testimony hereinbefore related, it was more than justified in returning a verdict of guilty.

### Motion for New Trial

Defendant as his bases for a new trial urges that the court erred in the following matters:

1. In failing to assign timely and effective counsel.
2. In reopening the case to admit inadmissible testimony.
3. In the abuse of its discretion.
4. The charge was inadequate, prejudicially insufficient and misleading.
5. In failing to properly instruct as to what is reasonable doubt.

I. Assignment of Counsel

Defendant, when asked whether he desired that the court appoint counsel, first stated that he had anticipated having counsel present, but finally said: "I would like to get through with this thing" and agreed counsel be appointed.

Following the appointment of counsel, opportunity was afforded defendant to confer with such counsel for over one hour. After first ruling on a motion to quash, the court asked counsel if he was ready to proceed and he replied in the affirmative. In perhaps an excess of caution, the trial judge also asked defendant himself if he was ready to proceed and he replied that he was.

The argument that insufficient time was afforded defendant to confer with his attorney preceding the trial is therefore unsound.

"If the defendants deemed themselves unprepared to go to trial they should have moved at this point for

a continuance. Ordinarily a new trial will not be granted where no objection was raised at the trial as to lack of time for preparation and no request for additional time was made. 23 C.J.S. 1432, pg. 1134. No such request was made and their defense indicates that they were familiar with the nature of the accusations against them": Commonwealth v. Biancone, 175 Pa. Superior Ct. 6, 8.

II. The Reopening of the Case and the Permission of Additional Testimony

After both sides had rested, the trial was adjourned until the third day. At the beginning of that session the district attorney requested that he be permitted to take off his rest in order that Faragelli might be called as a witness to testify to certain conversations he had with defendant in which defendant told him that he would not plead guilty at that time because of the case pending against him in Philadelphia and that the publicity would prejudice his case in Philadelphia. The district attorney explained that he was without knowledge as to this testimony until the morning on which he made the request to take off his rest.

Although this testimony might conceivably be considered as rebuttal by reason of defendant's testimony, and apparently was so regarded by the Commonwealth, it appears to us to have been within the sound discretion of the trial judge to authorize the Commonwealth to take off its rest for the purpose of presentation of this testimony. See Commonwealth v. Gormley, 78 Pa. Superior Ct. 294; Commonwealth v. Bolish, 138 Pa. Superior Ct. 598; Commonwealth v. Zang, 142 Pa. Superior Ct. 573. Even where testimony is improperly admitted in rebuttal, which should have been offered in chief, no fundamental error is committed, it being within the discretion of the trial judge. See Commonwealth v. Libonati, 346 Pa. 504, 511;

Commonwealth v. Adams, 174 Pa. Superior Ct. 504, 508.

The witness Faragelli testified as follows:

"I said to him, (meaning Kumitis) 'All the other defendants in this case have pleaded guilty', and he told us that he was being held in Philadelphia on another charge and that if he would plead guilty to the offense or offenses he was charged with here, the publicity that he would get in the newspapers while here would hurt his chances in Philadelphia."

Aside from the problem of the order in which this testimony was offered, we believe that it was entirely competent. This testimony was not rendered incompetent because it might have implied that defendant had been arrested. Since it was otherwise admissible as revealing a strong inference that defendant was in point of fact guilty, when he assigned as a reason for not so pleading not his innocence, but rather because such a plea might affect "his chances in Philadelphia", the jury in our opinion was entitled to such testimony. Since such testimony, as presented, tends to prove the guilt of defendant on the charge before the court, it was not rendered incompetent because it tended to show defendant was in other difficulties. See Commonwealth v. Heller, 369 Pa. 457, 463; Commonwealth v. Robinson, 163 Pa. Superior Ct. 16, 23. In any event defendant had himself referred to his prior record voluntarily (see Commonwealth v. Farley, 168 Pa. Superior Ct. 204), and in addition there was no motion on the part of counsel to have Faragelli's testimony stricken, or any request for a mistrial.

In order to do fairness to defendant on this question, we charged as follows:

"In his testimony it developed that at one point at least he had previously been in jail, and through the trial occasionally we could not help but garner the information that this defendant had been in some kind

of difficulty prior to this time, and possibly is also in some difficulty at this time. We caution you that you should not permit pourself to arrive at any conclusion as the result of such evidence. It was not introduced and could not be introduced to establish the guilt of this defendant on the charges now before us. We do not know on what charges he was in jail or whether such charges were justified, and altogether it would be manifestly unfair for you to say to yourselves the defendant has been in previous difficulty and, therefore, it is likely that he committed the crimes in question. It was not introduced or could not be introduced for that purpose, but occasionally it got into the case because, for one reason, the defendant volunteered it, and then also because in developing the other facts of the case the incidental fact of his being incarcerated at one time or another was developed. But we caution you you should dismiss that from your minds as in any way dealing with the guilt or innocence of this accused."

III. Abuse of Discretion

This part of defendant's argument deals with various rulings in connection with evidence. In an attempt apparently to effect the credibility of the witness Burns, counsel asked him: "Have you ever been in difficulty with the Federal people?" The district attorney then objected to this question and we sustained it. Of course the question was too vague and uncertain to justify our requiring that the witness answer it. There was no attempt to rephrase it and the objection stood.

Another objection we sustained was in connection with the cross-examination of the same witness Burns who was asked by defendant's counsel: "Did you think you were going to receive leniency if you involved anyone else?" A. "No, I didn't." Q. "Just implicated him out of the goodness of your heart?" This was

objected to, and of course the question was objectionable for several reasons and the objection was sustained.

Another question was asked of Officer Faragelli and was sustained as not being within the scope of the direct examination.

IV. The Inadequacy and Prejudicial Nature of the Charge

For the most part the brief of defendant here deals with alleged minor misstatements of fact in the court's summation of the facts to the jury. Not only are these alleged misstatements matters of little or no importance but we said to the jury: "You will accept the law from the court. But so far as the facts are concerned, you are the arbiters of the facts, and if you disagree with our recollection of any of the facts in this case, please disregard any misstatement on our part as being attributable to inadvertence and accept your own recollection of the facts."

At the conclusion of the charge we asked counsel whether there were other matters to which counsel would like us to refer, at which time counsel for defendant called to our attention a mistake of fact in our charge which was promptly corrected. There was no other suggestion of correction.

V. Charge on Reasonable Doubt

We said in this regard: "As to any of these offenses, it is incumbent upon the Commonwealth, in order to justify a conviction, to establish the guilt of the defendant beyond a reasonable doubt, for the defendant comes in presumably innocent of the charges. A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury or individual jurors to escape an unpleasant verdict. It must be an honest doubt arising out of the evidence itself, the kind of a doubt that would restrain a reasonable man or woman

from acting in a manner of importance to himself or herself.

"If you find from all this evidence a reasonable doubt as to this defendant's guilt, you should acquit him. On the contrary, after examining all of the evidence, you find the Commonwealth has in your judgment established the guilt of this defendant beyond a reasonable doubt, then you should find him guilty of such offenses in which you find no such element of reasonable doubt."

We believe that this charge was entirely adequate and proper and find no criticism therein. See Commonwealth v. Donough, 377 Pa. 46, 51.

VI. After Discovered Evidence

Defendant's primary reason for seeking a new trial on this basis is the fact that he alleges that his codefendants Howard alias Davelman, Ghaul, Burns and Lattanzi had either signed statements indicating that defendant was not one of the perpetrators of the crime or had otherwise so stated.

Howard was called by defendant and still insisted that defendant was not implicated; Ghaul was not called; Lattanzi agreed that he had not originally implicated defendant. This leaves but Burns who was not cross-examined on this subject. This and the additional reasons that defendant seeks a new trial based on so-called after-discovered evidence is not of such merit as to justify a new trial. All of this alleged after-discovered evidence would either be used solely to impeach the credibility of a witness or is of such nature that it would not likely result in a different verdict if the new trial were granted. See Commonwealth v. McSorley, 179 Pa. Superior Ct. 466, 469; Commonwealth v. Coroniti, 170 Pa. Superior Ct. 245.

Throughout his brief defendant engages in unbridled attacks upon the district attorney charging him with fraud and knowingly using perjured testimony,

that he coerced Lattanzi to deliberately and knowingly lie under oath. We may point out that this method of approach is not new to this defendant, for in the case of Commonwealth v. Kumitis, reported in 73 D. & C. 101, it is revealed that in that case a petition of defendant stated as follows: "The record clearly reveals that fraud and perjury was knowingly used by the district attorney to obtain the conviction." In justification to the district attorney who tried the present case, we believe that he conducted himself properly throughout the trial. It is not a new experience to find that a codefendant at first denies knowledge of the identity of persons who performed the crime with him, but who later changes his testimony to implicate his coconspirators.

In accordance with the views hereinbefore expressed we make the following

*Order*

And now, to wit, November 7, 1958, defendant's motions in arrest of judgment and for a new trial are overruled, denied and refused.