J. A29003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DORIAN WILLIAMS, | : | No. 1671 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, April 7, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0016576-2012

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED DECEMBER 18, 2015**

Dorian Williams appeals from the judgment of sentence of April 7, 2014, resulting from his conviction of first-degree murder.[1]  We affirm.

The trial court recited the following relevant facts:

> In August of 2012, Appellant and Susan Hammond were living together in an apartment at 2102 Patricia Lane, in North Versailles, Allegheny County.  They had been dating for approximately six months at that juncture.  In the evening hours of August 26, 2012, Appellant and Hammond returned to their apartment after visiting Hammond's sisters, Ameshia and Ashley Hammond.  Appellant and Hammond argued during that visit, and continued to argue when they returned home.
>
> Shortly before 11:30 P.M., Dorrian Freeman, Appellant's brother, arrived in the parking lot of 2102 Patricia Lane along with their mother, Barbara Freeman-Moore.  Freeman-Moore was living

---
[1] 18 Pa.C.S.A. § 2502(a).

with Appellant and Hammond at the time but did not have a key for the apartment and had to be let into the building by Appellant or Hammond. Appellant and Hammond exited the apartment together and let Freeman-Moore into the apartment. Hammond was on her way to work as a nurse, and Appellant followed her to the parking lot, apparently intent on continuing the argument. As Hammond walked to her car, Appellant approached Dorrian Freeman and told him that he was tired of Hammond and stated, "I got something for her." Freeman drove away, leaving Appellant and Hammond alone in the parking lot.

Appellant and Hammond continued to argue by her car as she attempted to leave for work. Hammond entered her car and Appellant also entered and continued the argument. Appellant pulled out a firearm, prompting Hammond to exit the car and run towards a dumpster. Hammond pleaded with Appellant, "Let's just go inside, let's just go inside." Appellant chased her and shot her once in the back of the head as she ran between two cars. Hammond immediately fell over onto one of the cars and slid to the ground in a kneeling position, with her back against the car. Appellant checked for a shell casing in the parking lot before fleeing in Hammond's car at 11:45 P.M.

Appellant immediately called a neighbor, Carlos Smith, to ask him if he had heard a gunshot in the parking lot. Smith stated that he had not. Appellant called Smith six more times that night/early morning: four times requesting that Smith look outside into the parking lot to make sure that no police were present; once at 12:26 A.M. requesting that Smith stay on the phone with Appellant while he drove back to the apartment complex and that Smith notify Appellant if anyone approached the parking lot; and a final time at 12:35 A.M. to thank Smith for his help. At 12:35 A.M. Appellant parked Hammond's car and verified that Hammond was still lying between two cars, clearly deceased. After that final call to Smith,

Appellant ran into the nearby wooded area to await a ride he had arranged.

At approximately 7:30 A.M. (August 27, 2012), a neighbor found Hammond's body between the two cars in the parking lot and called the police. Police and paramedics arrived shortly thereafter, and pronounced Hammond dead. Hammond was identified, the scene was secured, and neighbors were interviewed.

Appellant was on probation at the time, and he had failed to appear for his scheduled report date in August. Consequently, a probation violation arrest warrant was issued for Appellant on August 28, 2012. Appellant was not located until October 29, 2012, when he was apprehended in the East Hills section of the City of Pittsburgh, by the U.S. Marshals Fugitive Task Force. Appellant was interviewed by homicide detectives on October 29, 2012, and acknowledged his presence at the scene, but attributed Hammond's murder to a drive-by shooting targeting Appellant. Appellant initially stated that he blacked out after the gunshot. He later stated during the same interview that he fled the scene in Hammond's car immediately after the gunshot because he was the intended target, and after returning to the apartment he fled the North Versailles area because he had an outstanding bench warrant.

Trial court opinion, 4/14/15 at 4-7 (citations omitted).

Appellant was charged with criminal homicide.[2] A jury trial was held and appellant was convicted of first-degree murder on January 9, 2014. Appellant was sentenced to life imprisonment without the possibility of parole on April 7, 2014. Timely post-sentence motions were filed on

---

[2] 18 Pa.C.S.A. § 2501.

April 16, 2014; and appellant's trial counsel, Kirsha Weyandt, Esq., withdrew as counsel. On May 8, 2014, the trial court appointed Thomas Farrell, Esq., as appellant's counsel. The trial court granted Attorney Farrell an extension of time to file amended post-sentence motions on August 13, 2014. Appellant filed an amended post-sentence motion on September 2, 2014, which the trial court denied on September 9, 2014. Appellant then filed a timely notice of appeal to this court on October 9, 2014. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); appellant complied with the trial court's order on January 8, 2015, and the trial court filed an opinion pursuant to Rule 1925(a).

Appellant raises the following issues on appeal:

1. Whether the trial court abused its discretion in failing to grant a hearing and/or a new trial when the trial court denied the amended post-sentencing motions that requested a new trial based upon the after-discovered evidence?

2. Whether the trial court abused its discretion in allowing testimony that Appellant never went to the funeral of the victim when the probative value did not outweigh the danger of unfair prejudice?

Appellant's brief at 5.

Appellant's first issue for our review relates to after-discovered evidence. When considering whether an appellant is entitled to relief for after-discovered evidence, we are subject to the following standard:

To be granted a new trial based on after-discovered evidence:

> [Defendant] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.
>
> *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008, *cert. denied*, 555 U.S. 1198 (2009) (quoting *Commonwealth v. Randolph*, 873 A.2d 1277, 1283 (Pa. 2005), *cert. denied*, 547 U.S. 1058 (2006)). The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these facts has been met in order for a new trial to be warranted. *See Pagan*, *supra*; *Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa.Super. 2007), *appeal denied*, 958 A.2d 1047 (Pa. 2008).
>
> . . . .
>
> Further, a defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence solely to impeach the credibility of a witness. *See Pagan*, *supra*. "Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness, it constitutes impeachment. . . ." *Commonwealth v. Weis*, 611 A.2d 1218, 1229 (Pa. 1992).
>
> . . . .
>
> Finally, before granting a new trial, a court must assess whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted. *See Pagan*, *supra*; *Commonwealth v. Moore*,

633 A.2d 1119, 1136 (Pa. 1993). In making that determination, a court should consider the integrity of the alleged after-discovered evidence and the overall strength of the evidence supporting the conviction. ***Commonwealth v. Parker***, 431 A.2d 216, 218 (Pa. 1981) (stating conflicting accounts are inherently unreliable and would not compel different verdict in new trial). ***See also Commonwealth v. Washington***, 927 A.2d 586, 597 (Pa. 2007) (stating exculpatory accomplice testimony should be viewed with suspicion where accomplice has already been tried and has nothing to lose); ***Argyrou v. State***, 709 A.2d 1194, 1202-1203 (Md. 1998) (noting "cases that have addressed [newly-discovered evidence] have focused not simply on the credibility of the person offering the exculpatory evidence, but on the credibility or trustworthiness of the evidence itself, as well as the motive, or other impeaching charateristics, of those offering it"). . .

***Commonwealth v. Padillas***, 997 A.2d 356, 363-365 (Pa.Super. 2010) (citations formatted), ***appeal denied***, 14 A.3d 826 (Pa. 2010).

Appellant offers the following letter as after-discovered evidence:

7-25-14

To whom it may concern,

My name is Joshua Yingling inmate #LN 8033, an inmate at SCI Camp Hill. In October 2012 I was at Allegheny County Jail in intake with My co-defendant Clayton McKinnon. At that time he had approached me saying that he had a way that we could get out of jail. I asked him what he was talking about. He then told me knew about a shooting that had happened to his friends cousin. He told me that they didn't know who did it but there was someone in intake with us by the name of Dorian Williams that he could blame it on to get out of trouble. I told him that would be lying and wouldn't be right, but he then said he don't care as long as he don't go back to jail. I said that I didn't want anything to do with it. I later heard them

- 6 -

> talking and Clayton asked Dorian "Yo I heard you smoked somebody," and Dorian said "Naw, they got the wrong dude." I then approached Clayton again and told him that what he was doing was wrong and that he was lying about something that had nothing to do with him. He then told me I was right and that he wasn't going to get involved. I then found out a month ago that Clayton did in fact testify against Dorian Williams. I know for a fact that Clayton was lying on the stand to get out of trouble. I feel it wouldn't be right to hear about this and let another man (Dorian Williams) do time for a crime he did not do. I know for a fact Clayton was lying. Please get in touch with me as soon as you can so I know what I can do to help. I just wish I would have known sooner so I could have prevented this from happening. Please contact me at . . .
>
> . . . .
>
> Sincerely:
> /s/ Joshua Yingling

Docket entry 37.

There is no dispute that appellant's after-discovered evidence meets the first two requirements established by **Pagan** -- that the after-discovered evidence could not have been obtained prior to the conclusion of the trial, and that the after-discovered evidence will not be cumulative or simply corroborate evidence from trial. The trial court held that appellant failed to meet the third and fourth requirements under **Pagan** and, as a result, is not entitled to a new trial. (**See** trial court opinion, 4/14/15 at 15.)

Appellant fails to meet the third prong of the **Pagan** test because he has failed to establish that Yingling's letter does anything other than impeach McKinnon's testimony. Yingling's letter alleges that McKinnon,

while in intake at the Allegheny County Jail, decided to falsely implicate appellant in the victim's murder. Yingling then states that McKinnon lied on the stand about appellant's confession, and that appellant had actually denied any involvement in the victim's murder to McKinnon. This evidence serves no purpose other than to contradict McKinnon's previous testimony and otherwise discredit McKinnon. **See Weis**, **supra**. Therefore, appellant's after-discovered evidence claim has no legal merit.

Appellant brings to our attention several cases in which defendants have been granted new trials on the basis of after-discovered evidence uncovering perjury during trial. **See Commonwealth v. Coroniti**, 85 A.2d 673, 675 (Pa.Super. 1952) ("If perjury by an **essential** witness is admitted or is shown by **incontrovertible** evidence, a new trial should be granted, but if there is doubt as to the falsity of the testimony a new trial is properly refused) (emphasis added) (citations omitted); **Commonwealth v. Scott**, 426 A.2d 128, 130 (Pa.Super. 1981) (implying that a new trial should be granted for after-discovered evidence involving perjurious testimony at trial). (Appellant's brief at 21.)

We find that **Coroniti** is inapposite in the instant case for two reasons: (1) McKinnon was not an essential witness; and (2) the after-discovered evidence produced by appellant is not incontrovertible. As discussed below, and as noted by the trial court, the Commonwealth presented an overwhelming amount of evidence against appellant at trial. After carefully

reviewing the trial record, we find that McKinnon was not an essential witness to the Commonwealth's case. We also find that the after-discovered evidence produced by appellant is not incontrovertible. Appellant produced a letter from an inmate who was with McKinnon and appellant in intake at the Allegheny County Jail. Without any corroborating evidence that verifies the contents of Yingling's letter and indicates that McKinnon did indeed commit perjury during appellant's trial, we cannot determine that Yingling's letter constitutes incontrovertible evidence as required by **Coroniti**.

Moreover, even if appellant's purpose of using Yingling's letter was not solely to impeach McKinnon, we agree with the trial court that the evidence against appellant, even without McKinnon's testimony, was overwhelming. Specifically, the trial court provided the following list indicating the overwhelming amount of evidence that the Commonwealth presented:

> This evidence included: (1) physical evidence from the scene; (2) Appellant's statement to police where he stated that an unknown individual shot Hammond as she was walking in the middle of the roadway, which was inconsistent with where her body was found; (3) Appellant's statement to William Powell, his cellmate in the Allegheny County Jail, wherein Appellant admitted to shooting Hammond as he chased her and she fell between two cars, which was consistent with where Hammond's body was found; (4) testimony that Appellant and Hammond had been arguing frequently for months, Appellant would have violent outbursts during these arguments, and that Hammond and Appellant were arguing that evening; (5) testimony that Appellant told his brother, "I got something for her" minutes before Hammond was shot; (7) Appellant called a neighbor to see if he had heard a gunshot immediately after

Hammond was shot; (8) Appellant fled the area in Hammond's vehicle and only returned an hour later when he verified through his neighbor that no police had responded to the gunshot; (9) Appellant fled the area and was not located until October 29, 2012; and (10) Appellant had been seen with a firearm that was consistent with the type of firearm that fired the bullet found in Hammond's skull.

Trial court opinion, 4/14/15 at 15 n.5 (citations omitted). Given the overwhelming evidence presented against appellant at trial, appellant has failed to prove by a preponderance of the evidence that a new trial in which Yingling were to testify about his conversation with McKinnon would likely result in a different verdict. Therefore, we find that the trial judge did not abuse his discretion, and this claim is without merit.

In his second issue on appeal, appellant alleges that the trial court abused its discretion by allowing testimony that appellant did not attend the victim's funeral. Specifically, appellant claims that such testimony was unfairly prejudicial. (Appellant's brief at 30.) The trial court stated that it admitted evidence that appellant did not attend the victim's funeral, "to show consciousness of guilt given [appellant's] statement to police that he loved and cared for [the victim.]" (Trial court opinion, 4/14/15 at 23.)

When reviewing the admissibility of evidence at trial, we are held to the following standard:

Our standard of review regarding the admissibility of evidence is an abuse of discretion. "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing

> that the trial court abused its discretion. ***Commonwealth v. Weiss***, 776 A.2d 658, 697 (Pa. 2001) (citations omitted). "An abuse of discretion is not a mere error in judgment but, rather involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." ***Commonwealth v. Hoover***, 16 A.3d 1148, 1150 (Pa.Super. 2011).

***Commonwealth v. Cox***, 115 A.3d 333, 336 (Pa.Super. 2015) (***en banc***), quoting ***Commonwealth v. Collins***, 70 A.3d 1245, 1251-1252 (Pa.Super. 2013), ***appeal denied***, 80 A.3d 774 (Pa. 2013). "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "[U]nfair prejudice is defined as 'a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.'" ***Commonwealth v. Jemison***, 98 A.3d 1254, 1262 (Pa. 2014), quoting Pa.R.E. 403 comment.

Our cases provide very limited guidance that is analogous to the facts at issue. We find ***Williams v. United States***, 52 A.3d 25 (D.C. 2012), to be instructive in this case, despite the difference between the Federal and

Pennsylvania Rules of Evidence.[3]   In **Williams**, the District of Columbia Court of Appeals stated that, "the failure to attend the funeral of one's wife after her murder, when considered without further information, is inconsistent with the way a reasonable person would have acted." **Id.** at 41, citing **Allen v. United States**, 603 A.2d 1219, 1233 (D.C. 1992) (Rogers, C.J., concurring).  The **Williams** court further notes that,

> without trial court findings that the probative value of appellant's absence (reflecting guilt consciousness) exceeded the prejudicial impact (inflaming the jury), we cannot say as a matter of law that the funeral evidence was properly admitted, especially because "improper inferences [based on defendant's inaction] are likely to be over-valued by juries."

**Williams**, 52 A.3d at 41, quoting **Allen**, 603 A.2d at 1231 (Rogers, C.J., concurring).

Unlike **Williams**, the trial court here provided a finding of probative value of appellant's absence from the victim's funeral.  Specifically, the trial court noted that appellant made statements to the police that he "loved and cared for [the victim.]"  (Trial court opinion, 4/14/15 at 23.)  Appellant showed the police that he had the victim's name tattooed on his neck with

---

[3] The District of Columbia has adopted F.R.E. 403.  **Johnson v. United States**, 683 A.2d 1087, 1099 (D.C. 1996).  The official comment to Pa.R.E. 403 notes that the difference between the Federal Rules and the Pennsylvania Rules is that Pennsylvania does not require unfair prejudice to "substantially outweigh" probative value.  Pa.R.E. 403 Comment, **see also Commonwealth v. Boyle**, 447 A.2d 250, 254 (Pa. 1982).

the phrase "all in," which he indicated to mean that he was "all in the relationship with [the victim.]"  (Notes of testimony, 1/6/14 at 219.)

Unlike the defendant in **Williams**, who did not attend his wife's funeral because her family suspected that he was responsible for her death, nothing in the record in the instant case indicates that the victim's family suspected appellant in her death and that he was not welcome to attend her funeral. Therefore, the probative value concerning appellant's failure to attend the victim's funeral is not outweighed by unfair prejudice, and the trial court did not abuse its discretion in admitting such testimony.

Judgment of sentence affirmed.  Motion to remand is denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/18/2015